Charles MOORE and Willie M. Moore

v.

HOWARD PONTIAC–AMERICAN, INC.

Court of Appeals of Tennessee,
Eastern Section.

Dec. 18, 1972.

Certiorari Denied by Supreme Court
March 5, 1973.

Frantz, McConnell & Seymour, Wheeler A. Rosenbalm, Knoxville, for appellant, Howard Pontiac-American, Inc.

W. E. Badgett, Knoxville, for appellees, Charles Moore and Willie M. Moore.

## OPINION

COOPER, Presiding Judge (E. S.).

This is an appeal by Howard Pontiac, Inc., from a decree of the Chancery Court of Knox County which awarded $5,270.19 to the appellees, Charles Moore and Willie M. Moore, in an action brought by them to rescind a contract they made with appellant for the purchase of an automobile. Appellant insists the Chancellor erred (1) in rescinding the contract, and (2) in failing to allow the defendant an offset or credit for appellees' use of the automobile.

The facts are:

The plaintiffs purchased a 1971 Granville Pontiac automobile from the defendant on May 29, 1971, for $5,270.19. The sales contract provided:

"There is no warranty, express or implied, made by either the Pontiac Motor Division . . . or the selling Dealer on new Pontiac vehicles except the following direct Company vehicle warranties:"

Thereafter follows the new car warranty which provides in pertinent part as follows:

"Pontiac (Pontiac Motor Division, General Motors Corporation) warrants to the owner of each 1971 model Pontiac passenger car that for a period of 12 months or 12,000 miles, whichever first occurs, it will repair, or at its option replace, any defective or malfunctioning part of the car—except tires which are warranted separately by the tire manufacturer." * * *

"This is the only express warranty applicable to 1971 model Pontiac passenger cars and Pontiac neither assumes nor authorizes anyone to assume for it any other obligation or liability in connection with such cars."

Mr. Moore testified that as he drove the automobile to his home, he noticed the engine "Missed" and there was noticeable wind noise. On examining the automobile, Mr. Moore found the fenders, the nose cone, the trunk lid and the doors of the automobile were improperly fitted and out-of-line, the vinyl top had been improperly installed and there were noticeable runs in the paint on the nose cone of the automobile. Within days, it was found also that water leaked into the automobile at all door windows and the trunk leaked. There is also evidence that the disc brakes later were found to be out of round.

Mr. Moore testified that "right after (he) started having all the trouble with (his automobile)," he asked Mr. Howard to take it back and give him another, and that Mr. Howard refused to do so.

Appellees filed suit for rescission of the contract of purchase and damages on August 3, 1971. On filing suit, appellees stored the automobile, but started using it some two months later because of the inconvenience and prohibitive cost of other transportation available to them.

Both before and after appellees suit was filed, the appellant undertook to repair the automobile under the warranty in the sales contract. However, the evidence shows the repairs performed by appellant either were not effective, or, where effective, the appellant created new problems or caused new damage in making the repairs.

Appellant continued to make repairs to the automobile until February, 1972. At that time, the appellees notified the defendant by letter that they were revoking their acceptance of the automobile, and were proceeding with the suit.

On trial, which was by oral testimony, the Chancellor made a personal examination of the automobile and the defects described by the several witnesses. From the examination and testimony, the Chancellor found the "bulk" of the defects to the automobile "have remained uncured and

the (appellant) has apparently been unable to correct them." The Chancellor further noted there was evidence in the record that the cost of making the needed repairs would exceed $1,000.00. The Chancellor then decreed the contract for the purchase of the automobile be rescinded and awarded appellees a judgment for the full purchase price of the automobile.

Appellant insists appellees' remedy for breach of warranty in this case is limited by the terms of the sales contract to the repair or replacement of the defective or malfunctioning parts of the automobile and that, consequently, the Chancellor erred in rescinding the contract.

■ The seller of personal property may specifically limit the buyer's remedies for breach of warranty to the repair and replacement of non-conforming goods or parts by the seller; however, where the circumstances cause such a limited remedy to fail of its essential purpose, the buyer no longer is limited to the remedy provided in the agreement but has available the remedies provided by the Uniform Commercial Code. See T.C.A. 47-2-719(1)(a), (2) and (3). See also 17 A.L.R.2d 1010 et seq.

■ In this case, though given the opportunity to comply with its warranty, appellant either could not or would not make the necessary repairs or parts replacement to give appellees that which they purchased —an automobile substantially free of material defects—thus freeing appellants to seek other relief.

The relief sought and granted, was that of rescission under T.C.A. 47-2-608, which provides:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured: or

. . .

■ Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it."

Appellant insists the grant of rescission under the above statute was error in this case as (1) there was no proof the defects in the automobile substantially impaired its value, and (2) the revocation of acceptance of the automobile by appellee did not occur within a reasonable time after discovery of the defects and before a substantial change had been made in the automobile by plaintiffs' continued use of it.

■ We find no merit in the first insistence. To the contrary, there is evidence in the record that the costs of repairs needed to bring the automobile to standard approximate $1,300.00, or about 25% of the sale price of the automobile. Further, the record shows the appellant made the automobile available to the Chancellor for examination, and that the Chancellor examined the automobile before decreeing rescission—an opportunity denied us in weighing the testimony of the witnesses relative to the extent of the defects. Under these circumstances, we are constrained to find the defects in the automobile substantially impaired the value of the automobile.

■ As to the latter insistence of appellant, the determination of "a reasonable time" within which the buyer of an automobile may revoke his acceptance depends on the facts and circumstances of a particular case. T.C.A. 47-1-204(2). Under the contract of purchase in this case, appellees were obligated to notify the appellant of defects in the automobile and to give appellant a reasonable opportunity to remedy the defects before appellees were entitled to other relief. Cf. Lilley v. Manning Motor Company, 262 N.C. 468, 137 S.E.2d 847.

The time given appellant to make repairs does appear to be long, but not fatally so when balanced against the obligation of the appellant under the contract.

 It is a generally recognized principle of law that a party seeking rescission of a contract must return, or offer to return, what he has received under it, and thus put the other party as nearly as is possible in his situation before the contract. 55 Am.Jur., Vendor and Purchaser, Sections 636 and 639; 3 Williston on Sales, Sections 649, 649(a), at pages 498–502. The evidence shows appellees used the automobile during the time appellant was making repairs under the warranty and during the pendence of the suit for rescission. It must follow that the use reduced the value of the automobile. There is no specific provision in the Uniform Commercial Code for an offset for use of an automobile by the buyer. T.C.A. 47–1–103 does provide that:

> "Unless displaced by the particular provisions of Chapters 1 through 9 of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

Under a markedly similar statutory provision in the Uniform Sales of Goods Act, the Supreme Court of this State held that a buyer was liable for the use value of an automobile during the time the buyer was in possession. See Staggs v. Herff Motor Company, 216 Tenn. 113, 390 S.W.2d 245.

 In this case we are of the opinion, as insisted by appellant, that "complete justice and equity cannot be meted to the parties . . . unless the (appellant) is allowed a fair and reasonable compensation for the (appellees;) use of the automobile." We hold, therefore, that the appellant is entitled to an offset of a fair and reason-able use value of the automobile for the time the appellees made use of the automobile based upon the condition of this particular automobile. See Staggs v. Herff Motor Company, supra at page 250.

The decree of the Chancellor is modified accordingly. The cause is remanded to the Chancery Court of Knox County for a determination of the amount of offset to which appellant is entitled. Costs of the appeal are divided equally between the appellant and the appellees.

PARROTT and SANDERS, JJ., concur.