C. W. HARDIMON, Plaintiff-Appellee,

v.

CULLUM & MAXEY CAMPING CENTERS, INC., Defendant-Third Party Plaintiff-Appellant,

v.

EXECUTIVE INDUSTRIES, INC. and Chrysler Corporation, Third Party Defendants.

Court of Appeals of Tennessee, Middle Section.

Oct. 26, 1979.

Certiorari Denied by Supreme Court Dec. 27, 1979.

Abridged Opinion Jan. 9, 1980.

James Smith and Wayne Hyatt, Good-lettsville, for plaintiff-appellee C. W. Hardi-mon.

Thomas E. Watts, Jr., Nashville, for defendant-appellant Cullum & Maxey Camping Centers, Inc.

Jonathan M. Harwell, Nashville, for defendant-appellee Executive Industries, Inc.

J. G. Lackey, Jr., Nashville, for defendant-appellee Chrysler Corp.

TODD, Judge.

## ABRIDGED OPINION

(With the concurrence of participating judges, the original opinion has been abridged for publication.)

Plaintiff, C. W. Hardimon, sued defendant, Cullum & Maxey Camping Centers, Inc., to recover the purchase price of an allegedly defective "motor home" purchased from Cullum & Maxey, which purchase plaintiff claims to have disaffirmed by re-delivery of the motor home to Cullum & Maxey.

Cullum & Maxey answered denying plaintiff's right to recover and sued Executive Industries, Inc., and Chrysler Corporation as third party defendants as manufacturers

of the motor home, seeking judgment over against them for any amount recovered by plaintiff from Cullum & Maxey.

Executive Industries denied liability and sought judgment over against Cullum & Maxey and Chrysler Corporation for any amount recovered from Executive.

Chrysler denied liability as to the claims of both Cullum & Maxey and Executive Industries.

Cullum & Maxey filed a countersuit against plaintiff for $20,000.00 and, during the trial, plaintiff amended his complaint to sue for failure to re-sell the motor home in a commercially reasonable manner after plaintiff re-delivered it to Cullum and Maxey.

The Chancellor filed a memorandum reciting the following:

". . . The vehicle was manufactured in California by Executive Industries, Inc. Executive built the motor home on a chassis sold to it by the Chrysler Corporation.

. . . In February 1975, Hardimon purchased the 31-foot Executive motor home from Cullum & Maxey in Nashville . . . Hardimon had trouble with the motor home from the minute he took delivery—it wouldn't start when he tried to drive it off Cullum & Maxey's lot. When he finally got it started and tried to drive it to Kentucky, he had trouble trying to keep it on the road, a problem which plagued the motor home during the entire eight and one-half months he possessed it. The first night he drove it, the lights would not work.

For seven months, Hardimon tried to have the motor home repaired. He repeatedly took it back to Cullum & Maxey and to Chrysler's Local dealer. The unit never drove properly or even safely, and it was not suitable for use as a permanent residence. After consulting with an attorney, Hardimon returned the motor home to Cullum & Maxey in October 1975 and revoked his acceptance of the goods.

Hardimon is entitled to recover "so much of the [purchase] price as has been paid." T.C.A. § 47-2-711(1). He made a down payment of $8,887. He made eight monthly payments of $466, for a total of $3,728. The total purchase price paid is thus $12,515.

The defendants take the curious position that Hardimon is not entitled to recover the full amount of the down payment because Cullum & Maxey intentionally misrepresented the value of the trade-in vehicles to Hardimon in an effort to mislead him into believing he was getting a better deal than he actually received. The defendants say the real value of the trade-in vehicles was the price obtained by Cullum & Maxey when it sold the units, $6,095. Having represented to Hardimon that the trade-in vehicles were worth in excess of $8,000 in order to induce him to buy the motor home, Cullum & Maxey and other defendants are estopped to deny the value represented. A court of equity could not countenance such deception.

.     .     .     .     .

Hardimon is entitled to recover the time he missed from work tending to the defective motor home ($375), the payment to Third National Bank to extend his loan ($150), and the cost of repairs he incurred ($181). He is not entitled to recover for the other items he claims.

.     .     .     .     .

. . . Cullum & Maxey incorrectly asserts that the two contract documents executed by the parties contain valid exclusions of implied warranties.

The attempted exclusions do not conform to the Code. T.C.A. § 47-2-316(2)(3). The purchase order form (Exhibit 1) does not remotely comply with the Code. The security agreement (Exhibit 2) has buried in the fine print on the reverse side the words "as is." Implicit in subsection (3) of § 47-2-316 is the requirement that the attempted exclusion be conspicuous, or at least not hidden.

.     .     .     .

. . . With the revocation of the acceptance, the sale contract is rescinded. The transaction is voided—there is no longer a sale. There is thus no implied warranty.

. . . since the sale contract is rescinded and there is no sale, Hardimon has no claim against either Executive or Chrysler for the same reason he has no warranty claim against Cullum & Maxey.

* * * * *

After Hardimon returned the motor vehicle to Cullum & Maxey in October 1975, it was left on Cullum & Maxey's lot for one year. Cullum & Maxey then sold the motor home to Garrison, the Westmoreland used car dealer, for $15,000.

. . .

. . . Cullum & Maxey did not dispose of the collateral in a commercially reasonable manner as required by T.C.A. § 47–9–504. Cullum & Maxey is not entitled to recover from Hardimon.

The central issue in this entire litigation is whether the loss caused by the sale of the defective motor home to Hardimon must fall on the seller, Cullum & Maxey, or the manufacturer, Executive. The Court concludes that Cullum & Maxey must bear the loss.

The relationship between the parties is governed by a contract, termed "dealer agreement," dated August 23, 1974 (Exhibit 12). . . .

. . . Cullum & Maxey and Executive agreed that the only warranty given by Executive to Cullum & Maxey would be an express, written warranty . . The express warranty (Exhibit 6) spells out the duties imposed upon Executive in the event it manufactures and sells a motor home which is defective. There is no evidence that Executive failed to honor any substantial warranty claim made against it by Cullum & Maxey.

The contract further provides that Cullum & Maxey was to have performed the warranty work and that Executive was to have reimbursed Cullum & Maxey for that work. (Paragraphs 3(m) and 4(e)). Cullum & Maxey did not perform the warranty work for Hardimon as it was required to do under its contract.

———

Cullum & Maxey is not entitled to pass on to Executive the damages awarded to Hardimon . . . .

Chrysler's only involvement in the motor home was its sale to Executive of an engine and chassis for $3,573 upon which Executive built the coach. The evidence is inconclusive as to whether any of the unrepaired problems were covered by Chrysler's warranty. Apparently, Chrysler honored all warranty claims submitted to it. No party is entitled to any relief against Chrysler.

* * * * *

(2) Hardimon is awarded a judgment against Cullum & Maxey in the amount of $13,211.

(3) Hardimon's suit against Executive and Chrysler, Cullum & Maxey's suits against Hardimon, Executive and Chrysler, Executive's suits against Cullum & Maxey and Chrysler, and Chrysler's suit against Executive are all dismissed.

* * * * *."

A decree was entered accordingly from which only Cullum & Maxey has appealed.

The first assignment of error is:

"The honorable trial court erred in holding that Hardimon was entitled to revoke acceptance of the motor home when the motor home had undergone a substantial change in condition not caused by its own defects."

■ Appellant first argues that, even though defective, the vehicle was not worthless, hence the use of it from February through October over 7,000 miles must have effected a substantial change in its condition such as to preclude the belated return and disaffirmance. Appellant also points out the testimony of its witness that the vehicle would ordinarily lose 20% of its value in its first year of use.

In *Moore v. Howard Pontiac-American,* Tenn.App.1972, 492 S.W.2d 227, rescission

and damages were allowed where the vehicle was purchased on May 29, 1971, and

"Appellees filed suit for rescission of the contract of purchase and damages on August 3, 1971. On filing suit, appellees stored the automobile, but started using it some two months later because of the inconvenience and prohibitive cost of other transportation available to them.

Both before and after appellees suit was filed, the appellant undertook to repair the automobile under the warranty in the sales contract. However, the evidence shows the repairs performed by appellant either were not effective, or, where effective, the appellant created new problems or caused new damage in making the repairs.

Appellant continued to make repairs to the automobile until February, 1972. At that time, the appellees notified the defendant by letter that they were revoking their acceptance of the automobile, and were proceeding with the suit." (492 S.W.2d at 228)

The following observation of this Court in the cited case is pertinent to the present case:

"[4] As to the latter insistence of appellant, the determination of "a reasonable time" within which the buyer of an automobile may revoke his acceptance depends on the facts and circumstances of a particular case. T.C.A. 47–1–204(2). Under the contract of purchase in this case, appellees were obligated to notify the appellant of defects in the automobile and to give appellant a reasonable opportunity to remedy the defects before appellees were entitled to other relief. Cf. *Lilley v. Manning Motor Company*, 262 N.C. 468, 137 S.E.2d 847. The time given appellant to make repairs does appear to be long, but not fatally so when balanced against the obligation of the appellant under the contract." (492 S.W.2d at 229–230)

The cited case is not distinguishable from the present case by the filing of suit or notice or threat to revoke acceptance earlier than the final re-delivery. The controlling feature of both the cited case and of the present case is that there was a continuous pattern of defects and an equally continuous pattern of efforts of the dealer to correct the defects and to reassure the customer.

The obvious motive and purpose of the dealer's long continued efforts was to induce the customer to retain the vehicle and refrain from revocation. It would be neither just nor wholesome to hold that a customer waives his right to revoke acceptance by permitting the dealer to correct defects.

■ The second assignment of error is:

"The honorable trial court erred in fixing the damages assessed against Cullum & Maxey under the provisions of T.C.A. 47–2–711 and 47–2–715."

Orba Maxey, witness for appellant, testified without contradiction that the plaintiff's down payment on the subject vehicle consisted only of the trade-in of a truck and camper trailer which were "over-valued" at $8,887.00 in order to "make a deal" with plaintiff; that the practice of overvaluing trade-ins is accepted practice in the trade and is done in lieu of reducing the price of the vehicle being sold; that the actual "bargaining point" is the "difference" between the agreed price of the new vehicle and the agreed price of the "trade-in"; and that, if the trade-in were not overvalued, a corresponding reduction would be made in the price of the new vehicle, so that the "difference" to be paid by the customer would be the same.

Mr. Maxey was asked, but did not answer the "fair market value" of the truck and trailer traded in by plaintiff. He did testify that the truck and trailer were "probably put on our books at $5,000.00," but were ultimately sold at retail for $6,095.00. While this is not the most satisfactory evidence of the actual market value at the time of the "trade-in", the actual price obtained by a dealer selling at retail is persuasive evidence of actual value. This is especially true because the evidence shows that the trade-in truck and trailer were not

sold quickly but were kept on the sales lot of plaintiff until the "right man" came along to obtain the best sale.

There is no other evidence of the value of the trade-in except the amount of allowance for trade-in as shown on the sales agreement.

This Court does not agree with the Chancellor that an excessive trade-in allowance constitutes any fraud upon the purchaser. On the contrary, as between the parties to the transaction, the resolution of their dispute should be based upon the actual facts.

The second assignment of error is sustained to the extent of reducing the judgment by $2,675.00, the difference between $8,770.00 trade-in allowed by the Chancellor and $6,095.00, actual value of trade-in.

■ The third assignment of error is: "The honorable trial court erred in holding that the sales agreement and security agreement between Cullum & Maxey and Hardimon did not limit the warranty of merchantability."

Appellant quotes T.C.A. § 47–2–316 to the effect that implied warranties may be excluded by such expressions as "as is." The words "as is" were hidden in fine print on the reverse side of the sales contract. No valid exclusion of implied warranty is found in the sales contract.

The third assignment of error is respectfully overruled.

■ The fourth assignment of error is: "The honorable trial court erred in dismissing the claim of Cullum & Maxey against Executive for breach of its warranty of merchantability, and so declining to award damages."

Appellant argues earnestly that it is entitled to the benefit of an implied warranty of merchantability from Executive. The agreement between Executive and appellant provided that Executive would "stand behind" its products to the extent of paying appellant's labor and material costs to repair defective vehicles and that appellant assumed the duty of making such repairs at Executive's expense. This agreement pro-

vided the all-inclusive remedy for any defect in any vehicle sold to appellant by Executive. Appellant failed to perform its contractual duty to carry out the repairs. Therefore, regardless of the form of warranties in effect between appellant and Executive, appellant has no rights under such warranties except to perform the corrections and bill Executive for the expenses.

If the vehicle had been shown to be unrepairable, appellant's argument might have some basis; but the ultimate and proximate cause of the plaintiff's troubles was the failure of appellant to properly perform its duty to correct defects.

The fourth assignment of error is respectfully overruled.

■ The fifth assignment of error is: "The honorable trial court erred in dismissing the claim of Cullum & Maxey against Mr. & Mrs. Hardimon for the deficiency created by the security agreement upon the sale of the motor home."

Plaintiff was justified in revoking acceptance and disaffirming the sale. The disaffirmance of the sale invalidated it for all purposes, including any obligation to pay a deficiency residue of the purchase price.

The fifth assignment of error is respectfully overruled.

■ The sixth assignment of error is: "The honorable trial court erred in dismissing the claim of Cullum & Maxey against Executive for indemnity in view of the lack of fault on the part of Cullum & Maxey for the manufacturing defects in the motor home."

As previously discussed, appellant's rights against Executive were completely spelled out in their contract (i. e. appellant repair at Executive's expense). Therefore, there can be no other remedy under the contract. T.C.A. § 47–2–719(1)(a). Also, appellant's failure to repair as agreed constituted a breach of its contract with Executive which proximately caused the loss, hence appellant is barred from recovery under the contract.

Until appellant has shown that troubles chargeable to Executive *could not be corrected*, appellant is entitled to nothing from Executive but reimbursement for correcting the troubles.

The real reason for the ultimate revocation of acceptance was dissatisfaction with appellant's unsuccessful efforts to correct certain defects, notably the steering. It cannot be said that plaintiff would have revoked acceptance and disaffirmed if appellant had promptly and adequately corrected each defect as it appeared.

Appellant cites *Houseboating Corp. of America v. Marshall*, Tenn.1977, 553 S.W.2d 588; however, that case did not involve the contractual agreement between the manufacturer and dealer, which is involved in this case. In the present case, the form and extent of indemnity was agreed upon, i. e., reimbursement of expenses of repair.

The dereliction of appellant was not *failure to try* to correct defects, for it appears that appellant did try. The dereliction of appellant was the *failure to succeed* in correcting defects. This was evidently due to incompetence or lack of skill of the employees of appellant for which, unfortunately, appellant must bear the loss.

The sixth, and last, assignment of error, is respectfully overruled.

The foregoing renders unnecessary any further discussion of the rights of appellant to a judgment over against Executive or Chrysler, or the rights of Executive to a judgment over against Chrysler.

The judgment rendered by the Chancellor in favor of plaintiff and against Cullum & Maxey will be modified to $10,536.00. As modified, the judgment is affirmed. Judgment will be entered in this Court in favor of plaintiff and against Cullum & Maxey for $10,536.00 and all costs, including the costs of this appeal. The judgment of the Chancellor in favor of Executive and Chrysler is affirmed.

Modified and Affirmed.

SHRIVER, P. J., and LEWIS, J., concur.