**INTERNATIONAL TALENT GROUP, INC., Plaintiff–Appellant**

v.

**COPYRIGHT MANAGEMENT, INC., Defendant–Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 9, 1988.

Application for Permission to Appeal Denied by Supreme Court March 27, 1989.

Scott F. Siman and Benson & Siman, Nashville, for plaintiff-appellant.

R. Horton Frank, III and Dearborn & Ewing, Nashville, for defendant-appellee.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiff, International Talent Group, Ltd. (ITG), from the Chancellor's vacating an arbitration award to it in the amount of $76,400 by the extent it exceeded "the amount of license fees paid to [defendant], Copyright Management, Inc. (CMI)."

The pertinent facts are as follows:

ITG is a booking agency which books concert tours for performing artists, mainly rock musicians.

CMI administers music publishing copyrights and collects publishing and mechanical royalties. CM Systems, a division of CMI, markets CMI services as a consultant on computer systems and designs computer software programs.

ITG and CMI entered into an agreement for CMI to design a software package for ITG. The agreement also set forth the type of computer that would be used. CMI recommended a computer, but ITG contracted directly with Datapoint for its purchase.

The computer did not arrive when promised by Datapoint. After a lengthy delay, CMI recommended a different computer, also made by Datapoint, which was delivered. CMI received a commission for the sale from Datapoint.

There were long delays in delivery of the software and, even when delivered, the software was unusable. CMI proposed several "fixes" and "every fix" deranged another aspect of the system. During this time ITG's business was disrupted and employees' time was needlessly taken up.

CMI had promised a delivery date of 1 May 1984 for a fully operational software package. However, a full year after the new computer was installed, the promised software had not been delivered. As a result of failure of delivery of the software package, a dispute arose between the parties.

Pursuant to paragraph 14 of the "Software License Agreement" (the Agreement), the dispute between the parties was submitted to arbitration. Proceedings were held before the American Arbitration Association in Nashville, Tennessee. Following a lengthy hearing, the arbitrators rendered an award in favor of ITG in the amount of $76,400 "for failure to deliver a workable system." ITG then filed its petition in the Chancery Court for Davidson County, Tennessee, to confirm the award. CMI answered, denying that ITG was entitled to have the award confirmed, and filed a counterclaim in which it sought to have the award vacated on the ground that the Arbitrators had exceeded their powers.

The Chancellor, following his consideration of (1) the Software License Agreement, (2) the award of the arbitrators, (3) the modified award of the arbitrators, (4) the rules of the American Arbitration Association, and (5) the $7,500 license fee paid by ITG to CMI, found that the award should be vacated on the ground that the arbitrators had exceeded their authority in making an award in excess of the license fee paid by ITG to CMI.

ITG has presented two issues. The first is: "The trial court erred in reducing the lump-sum arbitration award in favor of ITG against CMI for failure to deliver a workable software-hardware computer system."

The Uniform Arbitration Act, Tenn.Code Ann. § 29–5–301 *et seq.*, governs the scope of judicial review of arbitration awards. Tenn.Code Ann. § 29–5–320 provides that the Uniform Arbitration Act is to be interpreted in a consistent manner with other jurisdictions. It has been held that the scope of authority of the arbitrators is determined by the terms of the agreement between the parties which includes the agreement of the parties to arbitrate the dispute. *Swift Industries, Inc. v. Botany Industries, Inc.*, 466 F.2d 1125, 1131 (3rd Cir.1972); *Malecki v. Burnham*, 181 Conn. 211, 435 A.2d 13, 14 (1980).

Rule 43 of the Rules of the American Arbitration Association provides in pertinent part:

43. SCOPE OF AWARD

The Arbitrator may grant any remedy or relief which the Arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

 The arbitrators may not award relief in excess of the limit of that relief agreed upon by the parties in the agreement entered into between the parties.

Paragraph 14 of the Agreement provides:

GOVERNING LAW: This agreement and performance hereunder shall be governed and construed in accordance with the laws of the State of Tennessee. Any and all proceedings relation [*sic*] to the subject matter hereof other than equitable remedies shall be settled by arbitration in the State of Tennessee in accordance with the Rules of the [*sic*] obtaining of the American Arbitration Association and judgement [*sic*] upon the award rendered may be entered in any Court having jurisdiction thereof.

ITG contends that the limited repair remedy set forth in paragraph 8 of the Agreement has failed its essential purposes, that "the issues subject to arbitration are unlimited and the remedies available to the arbitrators are unrestricted except for equitable remedies" and that, since the arbitrators are governed by Tennessee Law, the full range of remedies under the Tennessee Uniform Commercial Code are available when a limited repair remedy fails of its essential purpose.

Paragraph 8 of the agreement provides in pertinent part:

User [ITG] agrees that its sole remedy and Licensor's [CMI's] sole obligation if a warranted licensed program product does not substantially conform to Licensor's corresponding specification is for Licensor to provide programming support of services to correct the defect at licensor's [CMI's] sole cost and expense.

Paragraph 9 of the agreement provides in pertinent part:

LIMITATION OF LIABILITY: IN NO EVENT SHALL LICENSOR [CMI] BE LIABLE FOR ANY LOST PROFITS, INCIDENTAL, SPECIAL OR CONSEQUENTIAL OR OTHER DAMAGES SIMILARLY ARISING OUT OF ANY BREACH OF THIS LICENSE OR OBLIGATIONS UNDER THIS LICENSE. LICENSEE [ITG] AGREES THAT IN NO EVENT SHALL LICENSOR'S [CMI's] LIABILITY EXCEED THE TOTAL LICENSE FEE PAID HEREUNDER.

The total license fee paid by ITG to CMI was $7,500.

Tennessee Code Ann. § 47-2-719(2) provides: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in chapters 1 through 9 of this title."

In support of its argument that the full range of remedies under the Uniform Commercial Code as adopted by Tennessee is available to the arbitrators where the limited repair remedy fails of its essential purpose, ITG cites *Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081, 1084 (3rd Cir.1980), *cert. dismissed,* 457 U.S. 1112, 102 S.Ct. 2918, 73 L.Ed.2d 1323, and *Moore v. Howard Pontiac-American, Inc.*, 492 S.W.2d 227 (Tenn.App. 1972). In *Chatlos*, a computer system was delivered to the buyer. For eighteen months the seller attempted to make the computer system work properly and was unable to do so. The Third Circuit affirmed the District Court's holding that the limited repair remedy failed its essential purpose under § 2-719(2) of the Uniform Commercial Code.

In *Moore*, a car buyer sought to rescind a purchase agreement which provided *only* a repair remedy. This Court, in granting rescission, held: "[T]hough given the opportunity to comply with its warranty, [seller] either could not or would not make the necessary repairs or parts replacement to give [buyers] that which they purchased—

an automobile substantially free of material defects—thus freeing [buyers] to seek other relief." *Moore*, 492 S.W.2d at 229.

In both *Moore* and *Chatlos*, there was only one remedy provided to the buyers. The sole and exclusive remedy was the repair or replacement of the warranted defect. There was no provision for the payment of damages if the sellers were unable to repair or replace the warranted part. The buyers under the agreements had no alternative but to accept the automobile in *Moore* and the computer system in *Chatlos* as they were.

That is not the situation here. Here, the Agreement provides for the repair of the defective system and, if repair is not possible, then ITG is entitled to damages. Therefore, the remedy provided did not fail its essential purposes.

■ ITG, under the terms of the Agreement, is not prevented from recovering money damages from CMI. However, the Agreement entered into by the parties provides that "in no event shall [CMI's] liability exceed the total license fee paid."

So far as the record shows the parties freely and knowingly entered into the Agreement. The limitation on the recovery of damages is a valid provision.

When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no

choice but to refuse enforcement of the award.

*Swift Industries, Inc. v. Botany Industries, Inc.*, 466 F.2d 1125, 1129–30 (3rd Cir.1972) (citing *United Steel Workers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

The arbitrators' award of $76,400 is beyond the scope of the $7,500 liability which was agreed to by the parties.

Tennessee Code Annotated § 29-5-313(a)(3) provides that "[u]pon application of a party, the court shall vacate an award where: ... (3) [t]he arbitrators exceeded their powers."

We therefore conclude, as did the Chancellor, that the arbitration award did not draw its essence from the Agreement of the parties. The Chancellor correctly refused to enforce the award.

■ ITG also argues that damages attributable to the use of the computer are separate and distinct from the limitation of liability and remedy provisions. We disagree. The Agreement provides upon its face for the type of computer to be used. The Agreement contemplates that both the computer and the software were included within its terms. The computer was designated by the terms of the Agreement.

ITG's second issue is: "The trial court erred in holding that the arbitrators were required to make a specific written finding that the limited repair remedy failed of its essential purpose."

■ CMI concedes that arbitrators are not required to make detailed written findings of the bases for all of their conclusions. We agree. However, the determination of ITG's first issue did not in any way depend upon whether the arbitrators did or did not make detailed written findings of fact regarding whether or not the "limited repair remedy failed of its essential purpose." From our review of the record we are unable to say that the Chancellor based his judgment upon the failure of the arbitrators to make detailed written findings of fact regarding the "limited repair remedy."

Both of the issues presented by ITG are without merit. The judgment of the Chancellor is affirmed with costs of this appeal assessed to appellant ITG and the cause remanded to the Chancery Court for the collection of costs and for any further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.