# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 15, 2025 Session

## CARBON FIBER RECYCLING, LLC v. TIMOTHY SPAHN

**Appeal from the Chancery Court for Claiborne County**
**No. 20121      Elizabeth C. Asbury, Chancellor**

_____

### No. E2024-00741-COA-R3-CV

_____

A Tennessee LLC sued one of its members seeking injunctive relief, monetary damages, and his expulsion as an LLC member. The trial court issued a temporary restraining order restraining the defendant from misappropriating, using, or disclosing the LLC's trade secrets and confidential and proprietary business information. The defendant moved to dismiss the complaint and dissolve the temporary restraining order based upon an arbitration provision, a choice of law provision, and a forum selection clause contained in the LLC's operating agreement. The trial court granted the defendant's motion and held that it lacked jurisdiction and venue based on the forum selection clause and that the LLC failed to state a claim upon which relief could be granted due to the arbitration provision. We conclude that Tennessee law governs the operating agreement and affirm the trial court's dismissal of the complaint based upon the arbitration provision. However, we reverse the trial court's holding that it lacked jurisdiction and venue over the LLC's claims for temporary injunctive relief.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part; Case Remanded

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Kelly S. Street, Davis M. Capps, and Melissa B. Carrasco, Knoxville, Tennessee, for the appellant, Carbon Fiber Recycling, LLC.

Donald K. Vowell, Knoxville, Tennessee, for the appellee, Timothy Spahn.

## OPINION

### BACKGROUND

Appellant Carbon Fiber Recycling, LLC ("CFR") is a limited liability company ("LLC") formed under the laws of Tennessee with its principal place of business in Claiborne County, Tennessee. CFR is in the business of recycling carbon fiber composite materials. Appellee Timothy Spahn is a minority member and former manager of CFR. Mr. Spahn handled CFR's business development from the time it was founded in 2018 until August 15, 2023, when CFR's managers informed him that he was to immediately cease taking any action on CFR's behalf. The managers also informed Mr. Spahn that the monthly guaranteed payment he had been receiving would end and instructed him to return all CFR property in his possession. CFR alleges that Mr. Spahn breached his duties to CFR in several ways, including making misrepresentations about CFR's technology to potential customers, failing to secure purchase orders, providing CFR's product and/or confidential information to third parties without requiring them to sign CFR's standard non-disclosure agreement, and refusing to educate himself on CFR's inventory.

On August 18, 2023, Mr. Spahn returned his CFR-issued laptop computer (the "CFR Laptop"). CFR alleges that between August 15 and August 18, Mr. Spahn, or someone he allowed to access the CFR Laptop, deleted CFR-owned documents, spreadsheets, and other files from the CFR Laptop; transferred other CFR-owned files to a flash drive and then deleted the files from the CFR Laptop; and transferred dozens of other CFR-owned files, documents, spreadsheets, and presentations containing CFR's confidential and proprietary information to Mr. Spahn's personal Microsoft OneDrive account. On September 8, 2023, CFR sent Mr. Spahn a written demand that he return all of CFR's spreadsheets, documents, data, and files in his possession. Mr. Spahn initially denied having any CFR property but eventually produced the flash drive containing certain CFR-owned files; however, CFR alleges that the files at issue had also been deleted from the flash drive. Mr. Spahn also informed CFR that he had relevant materials saved to his personal laptop computer and emailed CFR hundreds of files, many of which CFR alleges contained its confidential and proprietary information. CFR further alleges that Mr. Spahn "continues to retain possession of CFR's highly confidential and proprietary information, stored on his personal OneDrive account or another device, and has not returned it" despite CFR demanding that he do so.

On September 19, 2023, CFR filed a verified complaint against Mr. Spahn in the Claiborne County Chancery Court (the "trial court") seeking injunctive relief, monetary damages, and his expulsion as a member. CFR claimed that Mr. Spahn "engaged in conduct related to CFR's business that makes it not reasonably practicable to carry on the business with [Mr.] Spahn as a member[.]" Therefore, it urged he "should immediately lose all governance rights, and upon payment of the fair value of his terminated membership interest . . . should be immediately and permanently expelled from

membership in CFR." CFR also alleged that Mr. Spahn misappropriated its trade secrets in violation of the Tennessee Uniform Trade Secrets Act ("TUTSA"), breached duties he owed to CFR pursuant to CFR's Amended and Restated Limited Liability Company Agreement (the "Operating Agreement"), and breached his duties of loyalty and care owed to CFR pursuant to the Tennessee Revised Limited Liability Company Act (the "Revised LLC Act").[1] Mr. Spahn's purported breaches of the Operating Agreement include engaging in certain acts and omissions "not in good faith, during the period that he was a Manager" of CFR and "improperly disclosing, divulging, and using CFR's trade secrets and other proprietary or non-public information of a business, financial, marketing, technical, or other nature pertaining to CFR and its business." Additionally, CFR filed a verified application for temporary restraining order ("TRO") and preliminary injunction restraining Mr. Spahn from misappropriating, using, or disclosing CFR's trade secrets and confidential and proprietary business information. Following a hearing on September 20, 2023, at which Mr. Spahn did not appear, the trial court granted the TRO.

On September 27, 2023, Mr. Spahn filed a motion to dismiss the verified complaint and dissolve the TRO due to a lack of subject matter jurisdiction, improper venue, and failure to state a claim as to the alleged breaches of the Operating Agreement. In support thereof, Mr. Spahn relied upon section 9.16 of the Operating Agreement, titled "Arbitration; Jurisdiction and Venue" which provides:

> (a) The parties agree that any dispute, controversy or proceeding arising out of or relating to this Agreement, the interpretation hereof or the matters contemplated hereby will be settled by arbitration, to be held in Wilmington, Delaware, in accordance with the arbitration rules then in effect of JAMS; provided, however, that the arbitrator will be knowledgeable in industry standards and practices, that the power of the arbitrator will be limited to interpreting this Agreement as written and that the arbitrator will state in writing the reasons for his or her award and the legal and factual conclusions underlying the award. The award of the arbitrator will be final, and judgment upon the award may be confirmed and entered in any court, state or federal, having jurisdiction.

---

[1] Section 2.1 of the Operating Agreement states that CFR is formed under the Act, and Article I of the Operating Agreement defines the "Act" as the Tennessee Limited Liability Company Act. Generally, LLCs formed in Tennessee prior to January 1, 2006, are governed by the Tennessee Limited Liability Company Act, compiled in Tennessee Code Annotated Title 48, Chapters 201-248 (the "old Act"), and LLCs formed in Tennessee on or after that date are governed by the Revised LLC Act, set forth in Title 48, Chapter 249. Tenn. Code Ann. § 48-249-1002. Although LLCs formed prior to January 1, 2006, can elect to be governed by the Revised LLC Act, LLCs formed on or after that date cannot elect to be governed by the old Act. *See id*. Accordingly, CFR is an LLC formed under the Revised LLC Act, having been formed in 2018.

(b) With respect to any dispute, controversy or proceeding arising out of or relating to this Agreement, the interpretation hereof or the matters contemplated hereby, each party expressly and irrevocably (a) waives any objection, and specifically consents, to the jurisdiction of and venue in the state and/or United States federal courts in each case located in Wilmington, Delaware so that any proceeding at law or in equity may be brought and maintained in any such court to enforce an arbitration award or in equity to bring an injunctive proceeding or seek other equitable relief . . . .

CFR opposed Mr. Spahn's motion to dismiss and argued that Mr. Spahn's purported misappropriation of CFR's trade secrets falls outside the scope of the Operating Agreement, the provisions of the Operating Agreement upon which Mr. Spahn's relies are permissive and not mandatory, and the Revised LLC Act is clear that Tennessee law governs this dispute. CFR also filed a motion to enforce the TRO, alleging that Mr. Spahn had taken no measures to comply with the TRO. CFR later filed a motion for a finding of contempt and sanctions against Mr. Spahn for his continued failure to comply with the TRO.

The trial court heard CFR's motion to enforce the TRO before hearing Mr. Spahn's motion to dismiss, and on March 13, 2024, the trial court entered an order holding him in contempt of the TRO. Ultimately, however, on April 25, 2024, the trial court entered an order granting Mr. Spahn's motion to dismiss the complaint and dissolve the temporary injunction, finding in relevant part:

2. That the Plaintiff's Complaint seeks enforcement of certain provisions of the parties' Amended Operating Agreement.

3. That the record shows that the parties expressly agreed that any dispute, controversy or proceeding arising out of or relating to the between the parties [*sic*] under the Amended Operating Agreement is subject to arbitration to be held in Wilmington, Delaware in accordance with the arbitration rules then in effect of JAMS.

4. That the parties hereto waived any objection and consented in the Amended Operating Agreement at issue in the Plaintiff's Complaint that jurisdiction and venue of any claim under the Amended Operating Agreement is in the state and/or United States federal courts located in Wilmington, Delaware.

5. That based on the Amended Operating Agreement at issue, this Court has no subject matter jurisdiction on the present claims and venue is not proper to adjudicate any issue in the Plaintiff's Complaint.

6. That the Plaintiff's Complaint thus fails to state a claim for which relief can be granted in this Court and as such, the Plaintiff's Complaint is dismissed without prejudice.

The Court declines to take any further action regarding this matter based on its decision.

CFR appeals the trial court's dismissal of its complaint and dissolution of the TRO.

## ISSUES

CFR raises four issues, which we restate slightly:

1. Whether the trial court erred in granting Mr. Spahn's motion to dismiss on the basis that jurisdiction and venue were improper in the trial court, finding that CFR's statutory claims, under the Revised LLC Act and TUTSA must be brought in a Delaware court or arbitration proceeding by operation of the Operating Agreement.

2. Whether the trial court erred in dismissing CFR's TUTSA claims on the basis that those claims are obviated by the Operating Agreement.

3. Whether the trial court erred in finding that the forum selection clause at issue is mandatory and not permissive in nature.

4. Whether the trial court erred in dismissing CFR's claim for judicial expulsion pursuant to the Revised LLC Act.

## STANDARD OF REVIEW

The trial court dismissed CFR's complaint due to a lack of subject matter jurisdiction and lack of venue. Because determinations of subject matter jurisdiction and proper venue are questions of law, our standard of review is de novo, without a presumption of correctness. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712–13 (Tenn. 2012). Likewise, the interpretation of a written contract is a question of law that we review de novo. *Pandharipande v. FSD Corp.*, 679 S.W.3d 610, 618 (Tenn. 2023).

## DISCUSSION

*a.*

We must first determine the law that governs the relationship between the parties. Section 9.11 of the Operating Agreement provides that the agreement itself "and the rights and obligations of the parties [t]hereunder shall be governed by and interpreted, construed

- 5 -

and enforced in accordance with the laws of the State of Delaware without reference to its choice of law rules." Despite this, CFR argues that this dispute should be governed by Tennessee law.

"Tennessee law recognizes that '[t]he individual right of freedom of contract is a vital aspect of personal liberty.'" *Baugh v. Novak*, 340 S.W.3d 372, 382 (Tenn. 2011) (quoting 21 Steven W. Feldman, *Tennessee Practice: Contract Law and Practice* § 7:1, at 728 (2006)). However, states have "an interest in promoting stable relationships among parties involved in the" businesses formed under the laws of such state. *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 91 (1987). Accordingly, it is not unusual for states to limit the rights of business owners, including LLC members, to govern their own internal affairs.

In Tennessee, LLC members may enter into an operating agreement to regulate the affairs of the LLC and govern relations between or among its members, managers, and the LLC. Tenn. Code Ann. § 48-249-203(a). Such operating agreement may even modify, alter, or waive any of the provisions of the Revised LLC Act, which provides default rules to govern relations between or among its members, managers, and the LLC, Tenn. Code Ann. § 48-249-205(a); however, this right to waive or modify the default rules is subject to certain limitations set forth in section 48-249-205(b). Importantly, these limitations prohibit an operating agreement from eliminating or varying the application of Tennessee Code Annotated section 48-249-1004(a). Tenn. Code Ann. § 48-249-205(b)(19). Section 1004(a) provides that the liability of a member or manager of an LLC formed and existing under the Revised LLC Act "shall at all times be governed by [the Revised LLC Act] and the laws of this state." Because section 1004(a) cannot be waived or otherwise modified, the language in section 9.11 of the Operating Agreement stating that the agreement itself and the rights and obligations of the parties thereunder shall be governed by Delaware law cannot stand. When the plain language of a statute is "clear and unambiguous, we need not consider other sources of information but must simply enforce the statute as written." *State v. Linville*, 647 S.W.3d 344, 354 (Tenn. 2022) (quoting *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016)).

The plain language of the statute is clear. The liability of Mr. Spahn, in his capacity as a member and former manager of CFR, an LLC formed in Tennessee in 2018, is governed by the Revised LLC Act and the laws of this state. Therefore, the choice of law provision set forth in section 9.11 of the Operating Agreement is invalid, and the Operating Agreement is instead governed by Tennessee law.

*b.*

We next turn to the arbitrability of CFR's statutory claims. CFR argues that the trial court erred in finding that its statutory claims arising under the TUTSA and the Revised LLC Act are subject to arbitration. Specifically, it argues that these claims exist

- 6 -

independent of the Operating Agreement and therefore do not "aris[e] out of or relat[e] to" the agreement. In response, Mr. Spahn argues that the arbitrability of these statutory claims is an issue to be determined by the arbitrator.

"Arbitration agreements are favored in Tennessee by both statute and case law." *Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. v. Wade*, 404 S.W.3d 464, 466 (Tenn. 2013) (citing *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 617 (Tenn. 2004)). The Tennessee Uniform Arbitration Act ("TUAA"), Tenn. Code Ann. § 29-5-301 *et seq.*, "governs the extent of judicial involvement in the arbitration process." *Id.* (citing *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d 445, 447–48 (Tenn. 1996)). The TUAA provides that written agreements to arbitrate are "valid, enforceable, and irrevocable, except upon a ground that exists at law or in equity for the revocation of a contract." Tenn. Code Ann. § 29-5-307(a). "By enacting the TUAA, the legislature has adopted a policy favoring the enforcement of arbitration agreements." *Wade*, 404 S.W.3d at 467 (citing *Buraczynski v. Eyring*, 919 S.W.2d 314, 317–18 (Tenn. 1996)).

"Because 'arbitration is a matter of contract, . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Frizzell Const. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). "Therefore, the scope of an arbitrator's authority 'is determined by the terms of the agreement between the parties which includes the agreement of the parties to arbitrate the dispute.'" *D & E Const. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 518 (Tenn. 2001) (quoting *Int'l Talent Grp., Inc. v. Copyright Mgmt. Inc.*, 769 S.W.2d 217, 218 (Tenn. Ct. App. 1989)). In the event of a dispute between the parties regarding whether a claim falls within the scope of an arbitration agreement, the default rules of the TUAA require that the court decide whether a controversy is subject to an agreement to arbitrate. Tenn. Code Ann. § 29-5-307(b). However, the TUAA allows the parties to waive or otherwise vary the effect of certain of its rules, including the requirements of section 307(b). *See* Tenn. Code Ann. § 29-5-305. In this case, section 9.16(a) of the Operating Agreement (the "arbitration provision") requires that certain matters "be settled by arbitration, to be held in Wilmington, Delaware, in accordance with the arbitration rules then in effect of JAMS[.]" Rule 11(b) of the JAMS Rules provides that "[j]urisdictional and arbitrability disputes, including disputes over the . . . interpretation or scope of the agreement under which [a]rbitration is sought . . . shall be submitted to and ruled on by the [a]rbitrator." JAMS Comprehensive Arbitration Rules & Procedures ("JAMS Rules"), Rule 11(b) (effective June 1, 2021), https://www.jamsadr.com/rules-comprehensive-arbitration. By specifically incorporating the JAMS Rules into the arbitration provision, the parties waived or otherwise varied the effect of section 307(b) and agreed instead that disputes regarding the scope of their arbitration agreement would be submitted to the arbitrator. *See Frizzell Const. Co.*, 9 S.W.3d at 86 (holding that "parties may choose the arbitration law by which they intend to be governed").

CFR further argues that its TUTSA claim is not arbitrable because the arbitration provision limits the arbitrator's authority to "matters of contractual interpretation." CFR's theory is that the language in the arbitration provision stating that "the power of the arbitrator will be limited to interpreting this Agreement as written" means that the scope of the arbitrator's authority is limited to "issues of contractual interpretation." However, this is an illogical interpretation of this language considering its context. As our Supreme Court has explained:

> It is well settled that courts must examine the content of the entire written agreement to determine the contracting parties' intent. "Contractual terms should be given their ordinary meaning . . . and should be construed harmoniously to give effect to all provisions and to avoid creating internal conflicts." *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996). In addition, a contract's provisions must be interpreted in the context of the entire contract, "'viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illustrate another.'" *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn.1999) (quoting *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)); *see also Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 597 (Tenn. Ct. App. 1999).

*D & E Const. Co.*, 38 S.W.3d at 518–19.

The full first sentence of the arbitration provision provides:

> The parties agree that any dispute, controversy or proceeding arising out of or relating to this [Operating] Agreement, the interpretation hereof or the matters contemplated hereby will be settled by arbitration, to be held in Wilmington, Delaware, in accordance with the arbitration rules then in effect of JAMS; provided, however, that the arbitrator will be knowledgeable in industry standards and practices, that the power of the arbitrator will be limited to interpreting this Agreement as written and that the arbitrator will state in writing the reasons for his or her award and the legal and factual conclusions underlying the award.

The first clause of this sentence makes clear that the scope of arbitration is not limited to the interpretation of the Operating Agreement but also includes "any dispute, controversy or proceeding arising out of or relating to . . . the matters contemplated" by the Operating Agreement. It would create an internal conflict if the second clause of the sentence meant just the opposite and limited the scope of the arbitration agreement to only the interpretation of the Operating Agreement, as CFR insists. Instead, we must construe these clauses harmoniously.

It is well-established Tennessee law that "a contract must be interpreted and enforced as written[.]" *E. O. Bailey & Co. v. Union Planters Title Guar. Co.*, 232 S.W.2d 309, 320 (Tenn. Ct. App. 1949). Since this Court's first use of the "as written" phrase in this context in 1949, there have been a plethora of cases further elucidating the meaning of the phrase. These cases make clear that when a contract is "plain and unambiguous, . . . it is the [c]ourt's function to interpret the contract **as written** according to its plain terms," without considering "the unexpressed intention of one of the parties," even if it "contains terms which may be thought harsh and unjust." *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561–62 (Tenn. Ct. App. 2003) (emphasis added) (citations omitted) (collecting cases). Conversely, when a contract is ambiguous, "the court must apply established rules of construction to determine the intent of the parties." *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 816 (Tenn. Ct. App. 2011) (quoting *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). We conclude that the limitation on the arbitrator's power to "interpreting th[e] [Operating] Agreement as written" is, in essence, a stipulation by the parties that the Operating Agreement is plain and unambiguous and should be interpreted by the arbitrator according to its plain terms versus by the application of established rules of construction.

Finally, CFR categorizes its request for judicial expulsion of Mr. Spahn pursuant to Tennessee Code Annotated section 48-249-503(a)(6) as a "claim[ ] for equitable relief via specific performance or injunctive relief" and argues that section 9.18 of the Operating Agreement (the "specific performance provision") exempts this request from the arbitration provision. We do not agree. Section 9.18 provides:

> The parties hereto acknowledge and agree that certain breaches of this [Operating] Agreement by any party hereto may not be adequately compensated in all cases by monetary damages alone. Therefore, in such instances, the parties hereto shall be entitled to enforcement of any such provision of this [Operating] Agreement by a decree of specific performance and to temporary, preliminary and permanent injunctive relief to prevent breaches or threatened breaches of the provisions of this [Operating] Agreement, and may seek such decree or relief before any court of competent jurisdiction.

As CFR acknowledges, the Operating Agreement does not provide for judicial expulsion. CFR's only right to seek this relief is provided by the Revised LLC Act; therefore, judicial expulsion of Mr. Spahn cannot be "specific performance" of the Operating Agreement. Similarly, judicial expulsion is not injunctive relief. Moreover, the specific performance provision only allows for injunctive relief "to prevent breaches or threatened breaches of the provisions of" the Operating Agreement, and CFR does not argue that judicial expulsion is necessary to prevent Mr. Spahn from breaching the Operating Agreement. Thus, this argument fails.

The parties in this case agreed to arbitrate any dispute, controversy, or proceeding arising out of or relating to the Operating Agreement, the interpretation thereof, or the

matters contemplated thereby and agreed that the arbitrator will be limited to interpreting the Operating Agreement according to its plain terms, without considering the unexpressed intention of one of the parties, even if it contains terms which may be thought harsh and unjust. Moreover, the parties agreed that the arbitration would be conducted in accordance with the JAMS Rules, which provide the arbitrator the authority to determine the scope of the arbitration provision. Therefore, whether CFR's statutory claims are arbitrable is to be decided by the arbitrator, and the trial court did not err in dismissing those claims.

*c.*

CFR also argues that the trial court erred in holding that jurisdiction and venue of any claim under the Operating Agreement are exclusively in the state and/or United States federal courts located in Wilmington, Delaware. CFR argues the specified Delaware courts are not the exclusive venue for its claims under the Operating Agreement because the forum selection clause is permissive, not mandatory, and because Delaware is a substantially less convenient forum than Tennessee.

First, we reiterate that the arbitrability of CFR's statutory claims is to be determined by the arbitrator, pursuant to section 9.16(a) of the Operating Agreement. Section 9.16(b), which contains the Delaware forum selection clause, only applies to a proceeding at law or in equity to enforce an arbitration award or in equity to bring an injunctive proceeding or seek other equitable relief. CFR did, in fact, seek injunctive relief in the form of a request for a TRO against Mr. Spahn, which the trial court initially granted before it later found it did not have jurisdiction. We believe that the trial court did have jurisdiction to consider CFR's request for a TRO based on the language of sections 9.16(b) and 9.18 of the Operating Agreement.

We reiterate the relevant sections of the Operating Agreement:

Section 9.16(b) provides, in part, that the parties to the Operating Agreement

expressly and irrevocably [] waive[] any objection, and specifically consent[], to the jurisdiction of and venue in the state and/or United States federal courts in each case located in Wilmington, Delaware so that any proceeding at law or in equity may be brought and maintained in any such court to enforce an arbitration award or in equity to bring an injunctive proceeding or seek other equitable relief[.]

Section 9.18 provides:

The parties hereto acknowledge and agree that certain breaches of this [Operating] Agreement by any party hereto may not be adequately compensated in all cases by monetary damages alone. Therefore, in such

instances, the parties hereto shall be entitled to enforcement of any such provision of this [Operating] Agreement by a decree of specific performance and to temporary, preliminary and permanent injunctive relief to prevent breaches or threatened breaches of the provisions of this [Operating] Agreement, and may seek such decree or relief before any court of competent jurisdiction.

We hold that the forum selection clause in section 9.16(b) is permissive. Although federal courts are frequently tasked with determining whether forum selection clauses are mandatory or permissive, *see e.g. Scepter, Inc. v. Nolan Transportation Grp., LLC*, 352 F. Supp. 3d 825, 830 (M.D. Tenn. 2018) (collecting cases), the parties have not cited any cases that apply Tennessee state law to this issue. However, this Court has engaged in this mandatory-versus-permissive analysis when analyzing other contractual provisions. *See e.g. Hall v. Park Grill, LLC*, No. E2020-00993-COA-R3-CV, 2021 WL 2135952, at *9 (Tenn. Ct. App. May 26, 2021) (option to terminate lease); *Isaac v. Ctr. For Spine, Joint, & Neuromuscular Rehab., P.C.*, No. M2010-01333-COA-R3-CV, 2011 WL 2176578, at *5 (Tenn. Ct. App. June 1, 2011) (employee bonus provision); *Loveday v. Barnes*, No. 03A01-9201CV0030, 1992 WL 136176, at *3–4 (Tenn. Ct. App. June 19, 1992) (liquidated damages provision). When a forum selection clause is mandatory, the courts specified in the clause have exclusive jurisdiction of all cases arising from the agreement at issue. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 758 n.7 (3d. Cir. 1973). However, when the clause is permissive, the parties merely consent to jurisdiction and venue in a forum that may not ordinarily govern them or otherwise be proper. *See id*. To determine whether a forum selection clause is mandatory or permissive, courts look for "reference to venue[,] [] language indicating the parties' intent to make jurisdiction exclusive[,] and [] language indicating a suit elsewhere is forbidden." *Keehan Tenn. Inv., L.L.C. v. Praetorium Secured Fund I, L.P.*, 71 N.E.3d 325, 332 (Ohio App. 9 Dist. 2016).

When analyzing contractual language, we recognize that "the word 'may' ordinarily connotes discretion or permission and will not be treated as a word of command." *Loveday*, 1992 WL 136176, at *4 (citing *Williams v. McMinn Cnty.*, 352 S.W.2d 430, 433 (Tenn. 1961); *Colella v. Whitt*, 308 S.W.2d 369, 371 (Tenn. 1957)). "The word 'shall,' on the other hand, is ordinarily construed as being mandatory." *Id.* (citing *Gabel v. Lerma*, 812 S.W.2d 580, 582 (Tenn. Ct. App. 1990)). There is nothing in the language of section 9.16(b) granting the Delaware courts exclusive jurisdiction or venue. *Compare Kopecky v. Holiday Inn Club Vacations, Inc.*, No. E2022-01137-COA-R3-CV, 2023 WL 4583622, at *2 (Tenn. Ct. App. July 18, 2023) (analyzing a forum selection clause providing for exclusive jurisdiction and venue in the courts of another state). It gives the parties the option of filing "any proceeding at law or in equity . . . to enforce an arbitration award or in equity to bring an injunctive proceeding or seek other equitable relief" in the Wilmington, Delaware courts but does not limit them to filing such proceeding only in those courts.

- 11 -

In addition, section 9.18 specifically grants any court of competent jurisdiction the authority to issue injunctive relief. In the present case, the trial court initially granted a TRO sought by CFR restraining Mr. Spahn from misappropriating, using, or disclosing CFR's trade secrets and confidential and proprietary business information. We agree with CFR that the specific performance provision in section 9.18 permitted it to seek the TRO in the Claiborne County Chancery Court. To the extent the trial court dissolved the TRO upon a conclusion that it did not have jurisdiction or venue over that claim due to the forum selection clause contained in section 9.16(b),[2] such dissolution was in error.

## CONCLUSION

For the foregoing reasons, we hold that CFR's claims are subject to arbitration, as provided by section 9.16(a) of the Operating Agreement, and we affirm the trial court in that respect. We reverse the trial court's decision to dissolve the TRO, as the trial court had jurisdiction to grant it. We remand this case to the trial court for consideration of whether the TRO should be re-issued. Costs of this appeal are taxed one-half to the appellant, Carbon Fiber Recycling, LLC, and one-half to the appellee, Timothy Spahn, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

---

[2] The trial court's basis for the dissolution of the TRO is unclear. In fact, the dismissal order only references the TRO when stating that it is granting Mr. Spahn's "Motion to Dismiss Complaint and Dissolve Temporary Injunction."