**Edward H. McCULLOUGH, Jr., Individually and on behalf of Kimberly Ann McCullough, a minor child,**

v.

**GENERAL MOTORS CORPORATION and Courtesy Pontiac, Inc.**

**No. C–81–2178–H.**

United States District Court, W.D. Tennessee, W.D.

Sept. 13, 1982.

James D. Bell, Robert J. Brantley, Jr., T. Frank Collins, Herbert F. Harris, Jackson, Miss., Lincoln Hodges, Memphis, Tenn., for plaintiff.

Leo Bearman, Memphis, Tenn., for defendants.

ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HORTON, District Judge.

This is a wrongful death action arising out of a motor vehicle accident occurring

on February 27, 1980, on Mississippi Highway 475 near Jackson, Mississippi. Plaintiff's wife died as a result of the accident, and their minor child was injured.

Plaintiff filed this lawsuit on February 26, 1981, against defendants General Motors Corporation and Courtesy Pontiac, Inc., a Memphis, Tennessee, automobile dealership. The complaint charged negligence, breach of warranty and strict tort liability. Upon motion by defendants and after hearing oral arguments, this Court has previously dismissed all tort claims since the applicable law for such claims is that of the State of Mississippi and Mississippi does not recognize the doctrine of "second collision" upon which plaintiff's tort actions are based. The Court ruled, however, that the plaintiff could proceed on the breach of warranty claims since those claims are governed by the law of the State of Tennessee.

Defendants have now filed a motion for summary judgment seeking dismissal of plaintiff's breach of warranty claims. Defendants contend that under Tennessee law, regarding breach of warranty claims based upon contract, there are no warranties either express or implied which are viable and applicable to the vehicle in question and that the defendant is entitled to judgment as a matter of law. After a thorough consideration of the entire record, the Court grants the motion for summary judgment as to defendant Courtesy Pontiac, finding there are no genuine issues of material fact and Courtesy is entitled to judgment as a matter of law. As to defendant General Motors Corporation, however, the Court finds that there do exist genuine issues of material fact which make this matter inappropriate for summary judgment.

*Defendant Courtesy Pontiac, Inc.*

Defendant Courtesy Pontiac, Inc., contends, in effect, that it made no warranties to plaintiff and therefore could not have breached any warranty. In support of the motion, Courtesy first relies on the disclaimer of warranties in the "New Vehicle Retail Buyers Order," which includes the following language:

> The Seller, COURTESY PONTIAC, INC., Hereby Expressly Disclaims All Warranties, Either Expressed or Implied, Including Any Implied Warranty of *MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE*, and COURTESY PONTIAC, *INC.*, Neither Assumes Nor Authorize Any Other Person To Assume For It Any Liability in Connection With This Sale.

Courtesy's second disclaimer of warranty appears in a document entitled "Car Invoice and Bill of Sale," which, in relevant part, reads as follows:

> All warranties on this vehicle are the manufacturer's. The seller, COURTESY PONTIAC, Inc., hereby expressly disclaims all warranties either express or implied, including any Implied Warranty of merchantability or fitness for a particular purpose and COURTESY PONTIAC, Inc. neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this vehicle. This disclaimer by the seller, COURTESY PONTIAC, Inc. in no way affects the terms of the manufacturer's warranty. Any exceptions to the above disclaimer must be noted on the vehicle buyers order.

The question before the Court is whether the above quoted passages effected a valid disclaimer of all warranties pertaining to plaintiff's automobile by Courtesy. The Court, acting pursuant to its diversity jurisdiction authority, will apply the Uniform Commercial Code (UCC) as adopted by Tennessee to adjudicate the sufficiency of the disclaimer. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Tennessee Code Annotated § 47–2–316 delineates the procedure by which any disclaimer of warranties must be made. In essence, this provision requires that disclaimers of implied warranties of merchantability mention the word "merchantability" and that the disclaimer appear conspicuously if in writing. *Curtis v. Murphy Elevator Co.*, 407

F.Supp. 940 (E.D.Tenn.1976). Also, the statute provides that implied warranties of fitness may be disclaimed only if they appear in writing and are conspicuous. Express warranties may be excluded by words or conduct evidencing disclaimer of warranties.

■ After reviewing the Buyer's Order and the Bill of Sale it appears that the disclaimers made by Courtesy meet the requirements of T.C.A. § 47–2–316. Additionally, the plaintiff signed the disclaimer of warranties provision of the Buyer's Order evidencing his acknowledgement thereof. The Tennessee Supreme court has held that such disclaimers between car dealers and purchasers are generally valid so long as they are drawn in conformance with the provisions of the UCC as codified in T.C.A. § 47–2–316. *Ford Motor Co. v. Moulton,* 511 S.W.2d 690 (Tenn.1974). In *Moulton,* the court cited with approval language from a treatise on the Uniform Commercial Code by White and Summers, which includes the following statement: "[T]here can be no breach of warranty if there is no warranty; there can be no warranty if the seller has disclaimed them pursuant to 2–316."

Therefore, since Courtesy properly disclaimed all warranties, plaintiff may not now bring an action based upon warranties that by contract were properly disclaimed and thus not in existence at the time of the accident. As Courtesy rightfully claims, there was no warranty to breach.

*Defendant General Motors Corporation*

The motion for summary judgment as it relates to defendant General Motors Corporation presents a much more complicated question. General Motors does not contend that there was no warranty but rather that the warranty had expired prior to the accident. Plaintiff, however, contends that the time limitation on the warranty is inoperative, at least to the extent that it applies to the collapsible steering column.

The warranty in question is found in a document entitled "Warranty Information on 1978 Pontiac New Cars." Examination of that document reveals an explanation of which items are warranted and which are not. Also, the document states in all capital letters:

ANY IMPLIED WARRANTY APPLICABLE TO THIS CAR IS LIMITED TO THE DURATION OF THIS WRITTEN WARRANTY.

The duration of the written warranty is stated in the document to be "12 months or 12,000 miles, whichever comes first." Further, it states that the warranty period begins on the date the car is first delivered or put in use. Since the car was purchased on March 15, 1978, defendant General Motors contends that all warranties, express or implied, expired no later than one year from that date, while the accident did not occur until February 27, 1980.

Generally, Tennessee courts have upheld such limitations as the 12-month, 12,000-mile limit in the General Motors warranty. See *Moulton, supra.* However, in this case, the plaintiff argues that the limitations, so far as it applies to the safety device is unreasonable and thus is inoperable. In essence, the plaintiff's contention is that a collapsible steering column is a unique safety device and is unlike most parts of an automobile in that a defect cannot be discovered until there is a life threatening emergency situation. While time limitations on warranties are generally given effect, plaintiff argues that in this particular case, involving this particular safety device, the limitation is "manifestly unreasonable" and should not be allowed to deny the plaintiff a recovery.

■ It is appropriate to consider the effects of T.C.A. § 47–2–719 governing contractual modification or limitation of remedy. Although this provision normally allows a seller to limit the remedies available under a warranty, the seller does not have total freedom on this point. Comment 1, explaining the purposes behind T.C.A. § 47–2–719, states:

Under this section parties are left free to shape their remedies to their particular requirements and *reasonable agree-*

*ments* limiting or modifying remedies *are to be given effect.*

However, it is of the very essence of a sales contract that at least *minimum adequate remedies* be available. If the parties intend to conclude a contract for sale within this Article [Chapter] they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article [Chapter] in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article [Chapter] are applicable as if the stricken clause had never existed. Similarly, under subsection (2), *where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article [Chapter].* (Emphasis added.)

Plaintiff relies heavily on T.C.A. § 47–1–204(1) which states that whenever chapters 1 through 9 of Title 47 require any action to be taken within a reasonable time, "any time which is not manifestly unreasonable may be fixed by agreement." Comment 1 to T.C.A. § 47–1–204 states:

Subsection (1) recognizes that nothing is stronger evidence of a reasonable time than the fixing of such time by a fair agreement between the parties. However, provision is made for disregarding a clause which whether by inadvertence or overreaching fixes a time *so unreasonable that it amounts to eliminating all remedy* under the contract. The parties may fix any time which is *not obviously unfair as judged by the time of contracting.*

The provision in the warranty made by General Motors that effectively limits the time within which a defect can be discovered is, according to plaintiff, "manifestly unreasonable" under T.C.A. § 47–1–204.

Plaintiff states in its memorandum of law as follows:

It is not within the means of the average consumer, such as the Plaintiffs, to discover a defect in a steering column that would prevent its collapsing in such an emergency. Any defect, though existing on the date of manufacture or on the date of sale, could not be discovered until the life threatening emergency arose. At that time, it is, of course, too late to take remedial action.

This argument is not unlike that used successfully in *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205 (3rd Cir.1970), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). There the court held that a 15-day notice requirement was manifestly unreasonable and ineffective to relieve the seller of its warranty obligations with respect to oil, sold for manufacture into resins, which contained a chemical contaminant which could not be detected until a complex chemical process took place after the time specified had elapsed. Similarly, in *Wilson Trading v. David Ferguson, Ltd.*, 23 N.Y.2d 398, 297 N.Y.S.2d 108, 244 N.E.2d 685 (1968) a contract for the sale of yarn provided that no claims would be allowed if made after "wearing, knitting, or processing, or more than 10 days after receipt of shipment." It was possible that there were latent defects that would render the yarn unmerchantable and could not reasonably be discovered within the given time period. If so, the New York Court of Appeals said, the limited remedy would fail of its essential purpose since the buyer would be left with no remedy from such defects. *See also, Vanderberg & Sons, N.V. v. Siter*, 204 Pa.Super. 392, 204 A.2d 494 (1964) (where it was held that a seller of tulip bulbs from Holland could not bar claims against it for defective bulbs by requiring notice before the bulbs would normally bloom.)

While it is true that most such latent defect cases involve raw products, in which the defect is not discovered until the product has been processed, the same basic analysis has been used in other situations.

The "manifestly unreasonable" rationale has been used in a federal district court decision involving the collapse of a 2000-foot television antenna occurring sometime after a six-month warranty limitation had elapsed. In *Community Television Services v. Dresser Industries*, 586 F.2d 637 (8th Cir.1978), the trial court refused to enforce the time limitation on defendant's liability set forth in the contract, holding that the six-month period was a "manifestly unreasonable" time for discovery and notification of breach under Section 57-1-14 of the South Dakota Commercial Code (virtually identical to T.C.A. § 47-1-204) in light of the tower's 25-year average useful life. (On review, the 8th Circuit Court of Appeals did not rule on whether the six-month limitation was "manifestly unreasonable," finding grounds to affirm the trial court judgment regardless of whether the limitation in the written contract was effective.)

Defendants contend that the *Moulton* decision, *supra*, by the Tennessee Supreme Court is controlling. There, a limitation of a new car warranty to 12 months or 12,000 miles was challenged as being *prima facie* unconscionable under T.C.A. § 47-2-719(3). The Supreme Court approved the reasoning of the Court of Appeals that the limitation was not "*prima facie* unconscionable." *Moulton, supra*, at 694.

This Court, however, finds that *Moulton* is not necessarily dispositive of the case at hand since in *Moulton* the Court of Appeals specifically left open the question of whether such a limitation could be construed as being "manifestly unreasonable" within the meaning of T.C.A. § 47-204(1). The court stated:

> There is no assignment of error that the limited period of express warranty is "manifestly unreasonable" within the meaning of T.C.A. 47-1-204(1). In the absence of any such assignment, we deem the issue waived by the plaintiffs.

Thus, the court in *Moulton* did not address all the issues raised in this case. Also, it is important to note that since the *Moulton* case was decided Tennessee ap-

pellate courts appear to have become much more flexible in regard to discovery of injuries by a plaintiff. For example, in *Teeters v. Currey*, 518 S.W.2d 512 (Tenn.1974), in a medical malpractice action, the Tennessee Supreme Court held that the cause of action accrued and the statute of limitations commenced to run when the patient *discovered* or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury. While *Teeters* was a tort rather than a contract case as we have here, the court's reasoning is nevertheless instructive:

> We find it difficult to embrace a rule of law requiring that a plaintiff file suit prior to knowledge of his injury or, phrasing it another way, requiring that he sue to vindicate a non-existent wrong, at a time when the injury is unknown and unknowable.

> \* \* \* \* \* \*

> [T]he public policy of our state is opposed to requiring that suit be filed when circumstances totally beyond the control of the injured party make it impossible for him to bring suit.

*Supra*, at 515.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment can be granted to the moving party if the Court finds that there are no genuine issues as to material facts to be tried. *Rogers v. Girard Trust Co.*, 159 F.2d 239 (6th Cir.1947). On motion for summary judgment, the Court must view the record in the light most favorable to the party opposing the motion. *C.F.W. Construction Co. v. Travelers Insurance Co.*, 363 F.2d 557 (6th Cir.1966). Much liberality is permitted in cases where there is a *possible* question as to whether a genuine issue of material fact exists. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir.1975).

A summary judgment should not be granted except where it is clearly appropriate. *C.F.W. Construction Co. v. Travelers Insurance Co.*, 363 F.2d 557 (6th Cir.1966).

This Court has on several occasions expressed the view that a trial judge should be slow in disposing of a case of any complexity on a motion for summary judgment, that while such a judgment wisely used is a praiseworthy and time saving device, yet such prompt dispatch of judicial business is neither the sole nor the primary purpose for which courts have been established, and that a party should not be deprived of an opportunity to fully develop his case by witness and a trial, when the issues involved make such procedure the appropriate one.

*S.J. Groves & Sons Co. v. Ohio Turnpike Commission,* 315 F.2d 235, 237 (6th Cir.), *cert. den.,* 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963).

While the Court is not willing at this point in the proceedings to find, as plaintiff suggests, that the express and implied warranties associated with the safety device should extend throughout the useful life expectancy of the product, the Court does find that there are genuine issues of material fact that make it inappropriate to grant summary judgment as to defendant General Motors Corporation. There are genuine issues of material fact concerning whether the 12-month, 12,000-mile limitation on the warranties made by General Motors operated to cause all warranties to expire prior to the accident. Important issues have been raised as to whether the warranty limitation, at least as it applies to the collapsible steering column, is "manifestly unreasonable" under T.C.A. § 47–1–204 or "fails in its purpose or operates to deprive either party of the substantial value of the bargain" as described in the comments to T.C.A. § 47–2–719.

A determination of these issues will require a careful consideration of the purpose and effect of the time limitation, the commercial setting in which the contract was executed, the reasonableness of the time limitation at the time of contracting, and the particular consequences of applying such a time limitation to a safety device of the type in question in this case.

For the reasons stated, the court grants summary judgment as to defendant Courtesy Pontiac, Inc., but denies summary judgment as to defendant General Motors Corporation.

IT IS SO ORDERED.