IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 21, 2009 Session

## BAPTIST MEMORIAL HOSPITAL and
## BAPTIST MEMORIAL HEALTH CARE CORPORATION
### v.
## ARGO CONSTRUCTION CORPORATION,
## HANSON PIPE & PRODUCTS SOUTH, INC., and ETI CORPORATION
### and
## ARGO CONSTRUCTION CORPORATION
### v.
## HANSON PIPE & PRODUCTS SOUTH, INC.

**Appeal from the Circuit Court for Shelby County**
**No. CT-004905-02     Jerry Stokes, Judge**

_____

**No. W2008-00822-COA-R3-CV - Filed July 29, 2009**

_____

This appeal involves a cross-claim for indemnity. The cross-plaintiff construction company served as the general contractor on a drainage improvement project for a hospital. The cross-defendant subcontractor manufactured and provided concrete pipe for the project, which was installed by the general contractor. After completion of the project, a sinkhole developed in the hospital's parking lot. An investigation revealed that the internal steel reinforcement for the concrete pipe was improperly positioned. The hospital sued, among others, the general contractor and the pipe subcontractor. The general contractor then filed a cross-claim against the pipe subcontractor for indemnity in the event the hospital received a judgment against the general contractor. The subcontractor filed a motion for summary judgment as to the general contractor's indemnity claim, arguing that the claim was barred by (1) the one-year limitations period contained in the parties' contract, as permitted under Tennessee Code Annotated § 47-2-725, and (2) the exclusive remedy provision in the parties' contract, which provided that the only remedies available to the general contractor were repair, replacement, or refund of the purchase price of the pipe. The general contractor argued that the one-year contractual limitations period was not applicable to its indemnity claim, and that the exclusive remedy provision did not preclude its indemnity claim. In the alternative, the general contractor argued that, because the defect in the pipe was latent and not discoverable upon reasonable inspection, the exclusive remedy in the contract failed of its essential purpose and the general contractor was not bound by it. The trial court granted the subcontractor's motion for summary judgment, concluding that the indemnity claim was barred by the one-year contractual limitations period and the exclusive remedy provision, and also that the latency of the alleged defect in the pipe did not cause the exclusive remedy to fail of its essential purpose. The

general contractor appeals. We affirm, finding that the exclusive remedy provision applies to bar the indemnity claim and that the exclusive remedy in the contract does not fail of its essential purpose.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

James B. Summers and Heather W. Fletcher, Memphis, Tennessee, for the Cross-Plaintiff/Appellant Argo Construction Corporation

Stephen D. Crawley and Mary C. Hamm, Memphis, Tennessee, for the Cross-Defendant/Appellee Hanson Pipe & Products South, Inc.

**OPINION**

### FACTS AND PROCEDURAL HISTORY

In 1998, Baptist Memorial Hospital and Baptist Memorial Health Care Corporation (collectively "Baptist" or "Baptist Hospital") engaged Argo Construction Corporation ("Argo") as the general contractor on a storm and sewage drainage system improvement project ("Project") to be performed on Baptist Hospital's East Campus in Memphis, Tennessee. Argo, as the general contractor on the Project, engaged Hanson Pipe & Products South, Inc. ("Hanson") as a subcontractor to provide, among other things, steel reinforced concrete pipe and related materials for use in the Project. The Project began in October 1998 and was completed in July 2000.

In late August 2001, a sink hole was discovered in Baptist Hospital's parking lot. A representative of ETI Corporation ("ETI"), which provided professional engineering services related to the Project, went into the drainage pipes installed as part of the Project and discovered that backfill material had infiltrated the drainage pipes and that there were cracks in the bottom of some of the pipes. At ETI's request, the American Concrete Pipe Association reviewed the Project. After its review, the American Concrete Pipe Association advised ETI that the pipes designated for use in the Project should not be experiencing the problem with cracking, provided they were manufactured by Hanson according to the Project's specifications and were properly installed by Argo.

On August 27, 2002, Baptist filed this lawsuit against Argo, Hanson, ETI and Professional Service Industries, Inc. for damages arising out of the parking lot sinkhole and the pipe used in the Project. In its complaint, Baptist asserted claims against Argo for breach of contract, breach of implied warranty, and negligence, and asserted claims against Hanson for breach of implied warranty and negligence. Argo and Hanson both denied liability with respect to all claims.

On October 2, 2007, Argo filed an amended answer and a cross-complaint against Hanson. In its cross-complaint, Argo asserted express and implied indemnity claims against Hanson,[1] alleging that but for Hanson's failure to supply pipe that was free of defects, Argo would not have been named as a defendant in the lawsuit, and therefore, Argo is entitled to indemnity from Hanson in the event that a judgment is entered against Argo.

On October 25, 2007, Hanson filed an answer to Argo's cross-complaint and a countercomplaint against Argo. Hanson admitted that some of the reinforcing steel in the pipe supplied to Argo was mispositioned, but denied that the pipe caused the damages incurred by either Baptist or Argo. Hanson also asserted a claim for expenses, including attorney's fees, that it incurred in defending against Argo's cross-claim for indemnity.

On the same day, Hanson filed a motion for summary judgement as to Argo's cross-claim for indemnity. Hanson argued that it was entitled to summary judgment because Argo's cross-claim for indemnity is barred by the one-year limitations period contained in the sales contract between Argo and Hanson, as permitted under Tennessee Code Annotated § 47-2-725, and is also barred by the contract's exclusive remedy provision, which provides that the only remedies available to Argo are repair, replacement, or refund of the purchase price. In response to Hanson's summary judgment motion, Argo argued that the statute of limitations for indemnity is separate and distinct from the statute of limitations for breach of contract under Section 47-2-725, and so the one-year limitations period contained in the contract does not bar Argo's indemnity claim. Argo also argued that the exclusive remedy provision in the sales contract did not preclude Argo from asserting its indemnity claim. In the alternative, Argo contended that the exclusive remedy provided in the contract between Argo and Hanson fails of its essential purpose because the defect in the pipe was latent and not discoverable upon reasonable inspection, and so Argo would not be bound by the contract's exclusive remedy provision.

The trial court heard oral arguments on Hanson's motion for summary judgment on December 14, 2007. On March 27, 2008, the trial court entered an order granting Hanson's motion for summary judgment. The trial court concluded that Argo's cross-claim for indemnity is barred by the one-year contractual limitations period set forth in the sales contract, that the indemnity claim is barred by the contract's exclusive remedy provision, and that the latency of the alleged defect did not cause Hanson's exclusive remedy to fail of its essential purpose. Finding no just reason for

---

[1] Argo's express indemnity claim against Hanson was later dismissed. On appeal, Argo does not challenge the dismissal of its express indemnity claim.

delay, the trial court certified the judgment as final under Tennessee Rule of Civil Procedure 54.02.[2] Argo then filed a timely notice of appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

Argo presents two issues for our review. It argues first that the trial court erred by holding that the exclusive remedy provision in the sales contract precludes Argo's claim for indemnity. Second, Argo asserts that the trial court erred in holding that the one-year limitations period set forth in the sales contract, as permitted under Section 47-2-725, bars Argo's claim for indemnity.

In reviewing a trial court's grant of summary judgment, the appellate court must determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000) (citations omitted). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Because only questions of law are involved, we review the trial court's grant of summary judgment *de novo* with no presumption of correctness. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citation omitted).

---

[2] By Order entered on January 9, 2009, this Court directed Argo to obtain entry of a final judgement within ten (10) days of the entry of that Order or, alternatively, to show cause during oral argument on January 21, 2009 why this appeal should not be dismissed for failure to appeal an appealable order. This Court was concerned with whether the trial court's certification of the judgment as final under Tennessee Rule of Civil Procedure 54.02 was proper given that the trial court had yet to adjudicate Hanson's counterclaim for expenses and attorney's fees. At Argo's request, the parties were permitted to file supplemental briefs addressing the issue of whether the appellate court has jurisdiction to hear this appeal. Both parties are of the opinion that the certification was proper and that the trial court's March 27, 2008 order is a final judgment. The parties reasoned that an order made final under Rule 54.02 "must be dispositive of an entire claim or party," *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 558 (Tenn. 1990), and because the trial court's dismissal of Argo's indemnity claim disposed of its entire claim against Hanson, certification in this case was proper. The parties also relied on a case from the United States Supreme Court interpreting Federal Rule of Civil Procedure 54(b), the federal counterpart to Tennessee Rule 54.02. The United States Supreme Court held that the presence of counterclaims does not render certification inappropriate; rather, "[l]ike other claims, their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 9 (1980). "The factual analysis depends not on whether there are any facts in common between the adjudicated and the unadjudicated claim, but rather on whether the factual issues 'at the heart of' the claims are sufficiently distinct." *Prudential Ins. Co. of Am. v. Curt Bullock Builders, Inc.*, 626 F. Supp. 159, 169 (N.D. Ill. 1985). The parties assert that such is the case here. We note that a trial court's decision regarding whether to certify a judgment as final under Rule 54.02 is reviewed under an abuse of discretion standard. *Newell v. Exit/In, Inc.*, No. M2003-00434-COA-R3-CV, 2004 WL 746747, at *1 (Tenn. Ct. App. Apr. 7, 2004). We agree with the parties' analysis on this issue, and conclude that the trial court did not abuse its discretion in certifying the March 27, 2008 order as a final judgment.

ANALYSIS

The relevant provisions in the sales contract between Argo and Hanson are the one-year contractual limitations period, the exclusive remedy provision, and the limitations of liability provision. They state as follows:

**LIMITED ONE YEAR EXPRESS WARRANTY; DISCLAIMER OF OTHER WARRANTIES**. Seller warrants that the products will conform to any specifications expressly set forth in this Contract and otherwise will be free of defects in material and workmanship for a period of one (1) year after deliver. SELLER DISCLAIMS ALL OTHER EXPRESS, IMPLIED, OR STATUTORY WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE. Any promotional materials, technical brochures, designs, descriptions of products and their use, or other documents provided by Seller, and any statements by Seller's salespersons and representatives, are for general information only, and shall not be considered warranties or part of this Contract. BUYER ACKNOWLEDGES THAT IT HAS NOT RELIED UPON SUCH INFORMATION BUT HAS SATISFIED ITSELF INDEPENDENTLY AS TO THE PRODUCTS' MERCHANTABILITY AND FITNESS FOR BUYER'S PARTICULAR PURPOSE.

**EXCLUSIVE REMEDY.** If any product sold fails to conform to Seller's limited warranty within one (1) year after delivery, upon prompt notice by Buyer and Seller's determination that the products have been stored, installed, and maintained in accordance with Seller's recommendations and standard industry practice, Seller shall remedy such nonconformity at Seller's option and expense either by returning a repaired product, delivering a replacement, or providing a full refund of the purchase price by credit or payment. THIS REMEDY HAS BEEN TAKEN INTO ACCOUNT IN ESTABLISHING THE PRICE UNDER THIS CONTRACT, AND IS INTENDED AS A MUTUALLY ACCEPTABLE ALLOCATION OF RISK BETWEEN BUYER AND SELLER. IT IS BUYER'S SOLE AND EXCLUSIVE REMEDY AGAINST SELLER FOR BREACH OF WARRANTY OR FOR OTHER CLAIMS REGARDING THE PRODUCTS, WHETHER ARISING IN CONTRACT, WARRANTY, TORT, STRICT LIABILITY, OR OTHERWISE.

**LIMITATIONS OF LIABILITY**. SELLER, ITS OWNERS, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, SUCCESSOR, NOMINEES OR ASSIGNS SHALL NOT BE LIABLE FOR PUNITIVE DAMAGES, OR FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, LOSS OF USE, OR BUYER'S REMOVAL, RETURN/DISPOSAL, AND REINSTALLATION COSTS), REGARDLESS OF WHETHER SELLER IS AWARE OF THEIR POSSIBLE OCCURRENCE. IN NO EVENT SHALL THEIR LIABILITY EXCEED THE PURCHASE PRICE PAID. THESE LIMITATIONS HAVE BEEN TAKEN INTO ACCOUNT IN

ESTABLISHING THE PRICE UNDER THIS CONTRACT, AND ARE INTENDED AS A MUTUALLY ACCEPTABLE ALLOCATION OF RISK BETWEEN BUYER AND SELLER.

Thus, the contract between the parties to this appeal limits Hanson's warranty to one year after delivery of the pipe at issue. The exclusive remedy provision states that if the product fails to conform to Hanson's warranty, Argo's remedy is limited to repair, replacement, or refund of the purchase price. The contract further limits Hanson's monetary liability to the purchase price.

**Exclusive Remedy Provision**

Argo first argues that the trial court erred in holding that the contract's exclusive remedy provision bars its claim against Hanson for indemnity. Argo asserts that the exclusive remedy provision is intended to apply to claims based on breach of the sales contract. Rather than seeking damages for breach of contract, Argo contends, it is seeking indemnity in the event Baptist is awarded a judgment against Argo. Argo maintains that its indemnity claim exists independent of any claim under the sales contract and independent of the exclusive remedy provision. In support of this argument, Argo relies on the Tennessee Supreme Court case of ***Northland Insurance Co. v. State***, 33 S.W.3d 727 (Tenn. 2000), in which the Supreme Court stated that while "indemnity claims are, of course, linked to the underlying tort, they are separate and independent remedies under Tennessee law." ***Id.*** at 730 (citations omitted). Argo also notes that implied indemnity obligations "are imposed by law without the consent or agreement of the parties." ***Winter v. Smith***, 914 S.W.2d 527, 541–42 (Tenn. Ct. App. 1995). An implied obligation to indemnify may be imposed "when the obligation is a necessary element of the parties' relationship." ***Id.*** (citations omitted). Therefore, Argo asserts that its indemnity claim against Hanson is unaffected by the exclusive remedy provision in the sales contract.

In addition, Argo argues that it would be inequitable to deny it the opportunity to bring an indemnity claim against Hanson based on the exclusive remedy provision in the sales contract. Argo notes that, even if Argo is absolved of liability for its alleged negligent installation of the pipe, it could nevertheless be held liable to Baptist for breach of contract for its failure to install a working drainage system, and Argo claims that this would ultimately be Hanson's fault for supplying defective pipe. Argo also contends that it would be inequitable to bar Argo's indemnity claim against Hanson because the sales contract does not specifically preclude Argo from bringing an indemnity claim, but nevertheless specifically addresses Argo's obligation to indemnify Hanson. In support of this argument, Argo cites a Texas case holding that "[f]or a contract clause to preclude indemnity to an innocent retailer from the manufacturer of a defective product, the clause must include within its terms that such indemnity is specifically foreclosed." ***Howard P. Foley Co. v. Cox***, 679 S.W.2d 58, 63 (Tex. App. 1984) (citation omitted).

In response, Hanson cites a Tennessee case relied on by the trial court, ***Hardimon v. Cullum & Maxey Camping Centers., Inc.***, 591 S.W.2d 771 (Tenn. Ct. App. 1979). In ***Hardimon***, the plaintiff purchased a motor home from a dealer. ***Id.*** at 772. The motor home turned out to be defective. ***Id.*** The plaintiff ultimately disaffirmed the purchase, returned the motor home to the

dealer, and then sued the dealer to recover the purchase price of the motor home. *Id.* The dealer then sued the manufacturer of the motor home seeking indemnity in the event that the plaintiff received a judgment against the dealer. *Id.* at 772–73. The trial court dismissed the dealer's indemnity claim against the manufacturer, and the dealer appealed. *Id.* at 774.

On appeal, the dealer argued that the trial court erred in dismissing its claim for indemnity. Affirming the dismissal, the Court of Appeals stated that the dealer's "rights against [the manufacturer] were completely spelled out in their contract (i.e. [dealer] repair at [manufacturer's] expense)." *Id.* at 776. Based on the remedy provision in the contract, the Court of Appeals concluded that the dealer could not seek indemnification from the manufacturer, citing Tennessee's adoption of the provision in the Uniform Commercial Code permitting contractual limitation of remedies. *Id.*; *see also* T.C.A. § 47-2-719 (2001). The appellate court also noted that the dealer was barred from recovering against the manufacturer under the terms of the contract because the dealer failed to repair the motor home as required under the dealer's contract with the manufacturer. *Hardimon*, 591 S.W.2d at 776.

Argo argues that *Hardimon* is distinguishable in that the *Hardimon* Court found that the dealer, not the manufacturer, was responsible for the plaintiff's loss by failing to repair the defects in the motor home. In contrast in this case, Argo contends, Hanson is responsible for the damages incurred by Baptist, so equitable principles dictate that Hanson be required to indemnify Argo. Argo also notes that the *Hardimon* opinion did not discuss the theory of implied indemnity or the underlying equitable principles. In addition, Argo cites cases from other jurisdictions in which courts have declined to apply a contractual limitation of remedies provision to bar an indemnity claim. *See Schweber Elecs. v. Nat'l Semiconductor Corp.*, 850 P.2d 119, 125 (Ariz. Ct. App. 1992); *Majors v. Kalo Labs, Inc.*, 407 F. Supp. 20, 24–25 (M.D. Ala. 1975).

Argo is correct in observing that the Court of Appeals in *Hardimon* did not explicitly discuss implied indemnity. The *Hardimon* Court, however, stated that it rejected the claim of the appellant dealer against the manufacturer because the dealer sought to assert an indemnity claim beyond that set forth in the agreement between the parties. *Hardimon* discussed *Houseboating Corp. of America v. Marshall*, 553 S.W.2d 588 (Tenn. 1977), a case in which the Tennessee Supreme Court permitted a houseboat dealer to assert an indemnity claim against the houseboat manufacturer to recover for the dealer's losses incurred after a customer was allowed to rescind the sales contract on a defective houseboat. *Id.* at 590. In distinguishing *Houseboating*, the *Hardimon* Court noted that *Houseboating* did not involve the contract between the dealer and the manufacturer, and then stated: "In the present case, the form and extent of indemnity was agreed upon, i.e., reimbursement of expenses of repair." *Hardimon*, 591 S.W.2d at 777. A claim beyond that set forth in the contract would necessarily be a claim for implied indemnity.

Argo also argues that the *Hardimon* Court would have reached a different result had the manufacturer, rather than the dealer, been at fault for the plaintiff's loss. We respectfully disagree. *Hardimon* implied that the result might have been different had the dealer "shown that troubles chargeable to [the manufacturer] *could not be corrected*." *Id.* Thus, regardless of whether the defect was the fault of the manufacturer, the *Hardimon* Court held that the dealer was bound by the

contractual provision that obliged it to repair the motor home and obtain reimbursement from the manufacturer for the cost of the repair.

While both *Northland* and *Winter*, cited by Argo, discuss indemnity claims, neither holds that an indemnity claim is not barred by a contractual exclusive remedy provision. *Hardimon* clearly holds that the dealer's indemnity claim is in fact controlled by the contractual remedy provision. We agree with the trial court that *Hardimon* is controlling precedent. Therefore, we respectfully decline to consider the approaches taken by other jurisdictions.

As in *Hardimon*, the transaction in the present case involves goods, and is governed by the Uniform Commercial Code. *See Basham v. Tillaart*, No. M2002-00723-COA-R3-CV, 2003 WL 21780974, at \*3 (Tenn. Ct. App. July 31, 2003). Under the UCC, parties to a contract involving the sale of goods are permitted to modify or limit the remedies available. *See* T.C.A. § 47-2-719 (2001).[3] In this case, as in *Hardimon*, Argo and Hanson agreed to limit Argo's remedies, even going so far as to state that the limitations had "been taken into account in establishing the price under this contract." In *Hardimon*, the dealer's exclusive remedy against the manufacturer was reimbursement for repairs made to correct defects in the motor home. In the instant case, Argo's exclusive remedies against Hanson were repair, replacement, or a refund of the purchase price. The language in the exclusive remedy provision in the Argo/Hanson contract is very broad, providing that the stated remedies are the only available remedies for "BREACH OF WARRANTY OR FOR OTHER CLAIMS REGARDING THE PRODUCTS, WHETHER ARISING IN CONTRACT, WARRANTY, TORT, STRICT LIABILITY, OR OTHERWISE." We must conclude that Argo's claim for indemnity would come within the broad language of the exclusive remedy provision. Therefore, because Argo's rights against Hanson are "completely spelled out in their contract," *Hardimon*, 591 S.W.2d at 776, Argo is contractually precluded from pursuing its indemnity claim against Hanson.

---

[3] This UCC provision states as follows:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages:
> (a) the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
> (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in chapters 1-9 of this title.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

T.C.A. § 47-2-719 (2001).

Certainly this holding places Argo in the unenviable position of potentially being held liable for damages that were caused by defective pipe supplied by Hanson. However, this is the allocation of risk to which the parties agreed in the sales contract, and this Court cannot rewrite the parties' contract because its terms later prove to be burdensome. *See Pylant v. Spivey*, 174 S.W.3d 143, 152 (Tenn. Ct. App. 2003); *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 174 (Tenn. Ct. App. 2001).

### Failure of Essential Purpose

In the alternative, Argo contends that the exclusive remedy in the parties' contract fails of its essential purpose, and therefore Argo should be permitted to pursue the indemnity claim against Hanson.

As set forth in Tennessee Code Annotated § 47-2-719(1), the UCC expressly allows a seller to contractually limit the remedies available to a buyer. This, however, is subject to the proviso that, in the event that the circumstances cause the limited remedy in the contract to fail of its essential purpose, then the buyer may take advantage of other remedies available under the UCC. *See* T.C.A. § 47-2-719(2) (2001); *Watts v. Mercedes-Benz USA, LLC*, 254 S.W.3d 422, 427 (Tenn. Ct. App. 2007) (quoting *Moore v. Howard Pontiac-American, Inc.*, 492 S.W.2d 227, 229 (Tenn. Ct. App. 1972)). The official comments to this UCC provision explain that "it is of the very essence of a sales contract that at least minimum adequate remedies be available" and that "under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this . . . [Chapter]." T.C.A. § 47-2-719 cmt. 1 (2001).

The issue of whether a limited remedy fails of its essential purpose is separate and distinct from whether a limited remedy is unconscionable. *See* 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 12-10 (5th ed.). A limitation of remedy that is deemed unconscionable is void. 67A AM. JUR. 2D *Sales* § 843 (2003). Unconscionability can be procedural or substantive or both. 67 AM. JUR. 2D *Sales* § 210 (2003). Procedural unconscionability is usually "some impropriety during the process of forming the contract that deprives a party of a meaningful choice." *Id.* Substantive unconscionability involves whether the terms of the contract are overly harsh or one-sided.[4] JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 4-3 (2d ed.). In contrast with failure of essential purpose, the determination of unconscionability focuses on the circumstances as they existed when the parties entered into the contract.[5] 67 AM. JUR. 2D *Sales* § 213 (2003).

---

[4]An early case on unconscionability described it well: "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 499 (D.C. Cir. 1965).

[5]In an early discussion of unconscionability, one commentator stated: "It is not possible to *define* unconscionability. It is not *a concept*, but a determination to be made in light of a variety of factors not unifiable into a formula." JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 4-3 (2d ed.).

In the case at bar, Argo does not argue that the exclusive remedy provision is unconscionable, it contends only that the exclusive remedy in the contract fails of its essential purpose. Failure of essential purpose as codified in Tennessee Code Annotated § 47-2-719 "is concerned with the essential purpose of the remedy chosen by the parties, not with the essential purpose of the code or of contract law, or of justice and/or equity." *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 28 (Tenn. Ct. App. 1993) (citing 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 12-10 (3d ed.)). This provision "is concerned only with novel circumstances not contemplated by the parties and does not contemplate agreements arguably oppressive at their inception." *Id.* (citing WHITE & SUMMERS 3d ed., *supra*, § 12-10).

What then are "novel circumstances not contemplated by the parties" that would cause a limited contractual remedy to fail of its essential purpose? White and Summers note that

> [t]he most frequent application of 2-719(2) occurs when under a limited 'repair and replacement' remedy, the seller is unwilling or unable to repair the defective goods within a reasonable period of time. Thus the limited remedy fails of its essential purpose, i.e., fails to cure the defect. A remedy also fails when the seller is willing and able to repair, but the repairs cannot be done. This might happen because the goods have been destroyed.

WHITE & SUMMERS 5th ed., *supra,* § 12-10. In this case, however, the contractual remedy included refund of the purchase price as well as repair and replacement. This Court has previously held that "[u]nder Tennessee law, the availability of a refund remedy will prevent a repair remedy from failing of its essential purpose." *Arcata Graphics Co.*, 874 S.W.2d at 29 (citing *Int'l Talent Group v. Copyright Mgmt.*, 769 S.W.2d 217 (Tenn. Ct. App. 1988)). Therefore, the *Arcata* Court held, "a warranty providing for repair, replacement or refund provides a minimum adequate remedy that cannot fail of its essential purpose." *Id.* at 30.

Argo argues that the contractual remedy fails of its essential purpose because the defect in the pipe was latent and could not have been discovered within the one-year period. The trial court rejected this argument, relying on the case of *Contour Medical Technology, Inc. v. Flexcon Co.*, No. 01A01-9707-CH-00315, 1998 WL 242609 (Tenn. Ct. App. May 6, 1998). Argo distinguishes *Contour* from the present case, contending that *Contour* addressed whether the limited remedy was unconscionable, not whether it failed of its essential purpose. Argo notes that the *Contour* case specifically declined to determine whether a latent defect could render a limitation of remedies provision unconscionable, and that the Court in *Contour* found that the alleged defect at issue was in fact not latent.

We agree with Argo that this Court in *Contour* did not address the alleged latent defect in the context of the appellant's argument that the exclusive remedy in this case failed of its essential purpose. The Court's discussion of the alleged latent defect was in the context of the appellant's

contention that the latency of the defect rendered the limited contractual remedy unconscionable.[6] *See id.* at *6. While the *Arcata* Court stated broadly that a contract that allows for repair, replacement, or refund "cannot fail of its essential purpose," it did not address whether a latent defect that the buyer cannot discover until after the expiration of the limitations period can cause a repair, replacement, or refund limited remedy to fail of its essential purpose. Therefore, we will address Argo's argument that the latency of the defect in the pipe made the contractually limited remedy fail of its essential purpose.

On appeal, Argo argues that it was unable to discover the defect in the pipe within the one-year limitation of remedies provision in the parties' contract because the defect was latent and Argo did not anticipate such a defect. Because Argo did not become aware of the defect until after the one-year limitation of remedies provision expired, Argo was unable to utilize the remedies provided in the exclusive remedy provision. According to Argo, this case presents novel circumstances that were not reasonably contemplated by Argo at the time of contracting. Therefore, Argo contends, the exclusive remedy fails of its essential purpose because it would leave Argo with no remedy at all. Argo also argues that the exclusive remedy provision fails of its essential purpose because it deprived Argo of the substantial value of its bargain with Hanson. Argo bargained for Hanson to sell it pipe that conformed to specifications and was free of defects. However, because the pipe contained defects that could not have been discovered until the pipes failed, which was after expiration of the one-year contractual limitation period, the exclusive remedy operated to deprive Argo of the substantial value of its bargain and thus failed of its essential purpose.

The parties have pointed to no Tennessee court opinion squarely addressing this issue, and we have found none. Argo cites a decision by the United States District Court for the Western District of Tennessee, applying Tennessee law, in which the federal court found that a latent defect can cause a limitation of remedies provision to fail of its essential purpose. In *McCullough v. General Motors Corp.*, 577 F. Supp. 41 (W.D. Tenn. 1982), after an accident involving the plaintiff's vehicle, the plaintiff sued the dealer and the manufacturer of his vehicle for, *inter alia*, breach of warranty. *Id.* at 43. The defendant dealer filed a motion for summary judgment on the breach of warranty claims, noting that it had disclaimed all warranties. The district court granted the motion for summary judgment as to the dealer. *Id.* at 43–44.

The manufacturer filed a motion for summary judgment as well. While the manufacturer conceded that there was a warranty on the vehicle, it insisted that the warranty had expired prior to the accident. *Id.* The duration of the warranty was for "12 months or 12,000 miles, whichever comes first." *Id.* at 44. The accident occurred more than twelve months after the purchase date. *Id.* The plaintiff argued that although time limitations on warranties are generally given effect, in this particular case, the limitation was "manifestly unreasonable," insofar as it applied to the vehicle's collapsible steering column, because the steering column had a latent defect that could not be discovered until an accident occurs. *Id.*

_____

[6]In *Contour*, the "acknowledgement" that was shipped on the same day as the product ordered included a provision stating that the buyer's exclusive remedy was limited to repair, replacement, or refund of the purchase price. The buyer alleged that the exclusive remedy provision on the back of the "acknowledgement" was not part of the parties' "circle of assent" and that it failed of its essential purpose because the remedies were inadequate. These arguments were rejected. The latency of the defect was discussed only in the context of unconscionability.

In its analysis, the district court focused on whether the time limitation was "manifestly unreasonable." The court cited cases from other jurisdictions that have held that time limitations of various durations were "manifestly unreasonable" because the latent defect could not reasonably be discovered before the expiration of the limitation. *See Cmty. Television Servs. v. Dresser Indus.*, 586 F.2d 637, 641–42 (8th Cir. 1978) (on appeal, the 8th Circuit did not address the trial court's finding that the time limitation was "manifestly unreasonable," finding other grounds upon which to affirm the trial court's judgment); *Neville Chem. Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1217 (3d Cir. 1970). The *McCullough* court also cited a decision by the New York Court of Appeals, holding that a latent defect would cause a limited remedy to fail of its essential purpose if the defect could not reasonably be discovered before the expiration of the time period, because it would leave the buyer without a remedy. *See Wilson Trading Corp. v. David Ferguson, Ltd.*, 244 N.E.2d 685, 688 (N.Y. 1968).

Relying in part on these cases, the district court in *McCullough* determined that there was a genuine issue of material fact concerning whether the limited warranty, as applied to the collapsible steering column, was "manifestly unreasonable" under Tennessee Code Annotated § 47-1-204[7] or "fails in its purpose or operates to deprive either party of the substantial value of the bargain" as stated in the comments to Tennessee Code Annotated § 47-2-719. Therefore, the district court denied the manufacturer's motion for summary judgment. *McCullough*, 577 F. Supp at 47.

Argo cites cases from other jurisdictions in further support of its argument that a limited remedy can be found to fail of its essential purpose if the goods contain a latent defect that cannot be discovered upon reasonable inspection. *See Viking Yacht Co. v. Composites One LLC*, No. 05-538, 2007 WL 2746713, at *6 (D.N.J. Sept. 18, 2007); *Comind, Companhia De Seguros v. Sikorsky Aircraft Div. of United Techs. Corp.*, 116 F.R.D. 397, 413 (D. Conn. 1987);[8] *Majors*, 407 F. Supp. at 22–23; *Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 618, 625 (Mich. Ct. App. 1986); *Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191, 1198 (Wash. Ct. App. 1997).

---

[7] The *McCullough* case was decided before Tennessee adopted UCC revised Article 1. *See* 2008 Tenn. Pub. Acts ch. 930. The current provision, requiring that any time fixed not be "manifestly unreasonable," is codified at Tennessee Code Annotated § 47-1-302(b).

[8] In its brief, Hanson distinguishes *Comind* from the present case by arguing that *Comind* found that the limited remedy failed of its essential purpose because of the existence of a "remedial conflict," which was not present in this case. In *Comind*, the "remedial conflict" existed between the contract's warranty against all defects and the exclusive remedy provision that provided for repair or replacement if defects were reported within ninety days of delivery. *Comind*, 116 F.R.D. at 413–14. In its reply brief, Argo addresses Hanson's attempt to distinguish *Comind* by arguing that the discussion of the "remedial conflict" was not the basis for the court's holding that the ninety-day notice provision caused the exclusive remedy to fail of its essential purpose, and Argo also argued that there is a "remedial conflict" in this case.

Argo's reply brief is, of course, the appropriate place in which to challenge Hanson's arguments as to why *Comind* is distinguishable from the present case because "[a] reply brief is a response to the argument of the appellee." *Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007). We do not, however, interpret this as Argo asserting that a "remedial conflict" exists in the sales contract in this case, because Argo has pointed to no place in the record in which this argument was made to the trial court. Thus, it would be deemed waived on appeal. *See* Tenn. R. App. P. 36(a); *Alexander v. Armentrout*, 24 S.W.3d 267, 272 (Tenn. 2000).

-12-

The seminal case adopting this reasoning is *Wilson Trading*, cited by the district court in *McCullough*. *See McCullough*, 577 F. Supp. at 45. In *Wilson Trading*, a sales contract for yarn provided that the seller could not be held liable for claims made after the yarn had been processed or made more than ten days after receipt by the buyer. *Wilson Trading*, 244 N.E.2d at 686. The buyer alleged a defect in the yarn that was not discoverable until after the yarn had been processed and washed. *Id.* The *Wilson Trading* Court held that, under Section 2-719(2) of the Uniform Commercial Code, the remedy failed of its essential purpose because the "time provision eliminates all remedy for defects not discoverable before knitting and processing." *Id.* at 688.

> Commentators, however, criticized the reasoning in *Wilson Trading* and its progeny: It was not circumstances that left the buyer remediless but rather his own agreement to assume the risk for defects that could not be discovered within ten days. The stipulated remedy may have been unreasonable or unconscionable (and unenforceable for that reason) but it did not fail to achieve its essential purpose – to indemnify the buyer against latent defects that could have been discovered within ten days.

WHITE & SUMMERS 2d ed., *supra*, § 12-10. Thereafter, a split of authority developed, with numerous jurisdictions holding that a latent defect does not cause an exclusive contractual remedy to fail of its essential purpose. Several of these cases hold that Section 2-719(2) of the Uniform Commercial Code "is inapplicable once the warranty has expired." *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363, 374 (D. Mass. 1991). *See also Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1179–80 (5th Cir. 1988); *Wis. Power & Light Co. v. Westinghouse Elec. Corp.*, 830 F.2d 1405, 1412–13 (7th Cir. 1987); *Hart Eng'g Co. v. FMC Corp.*, 593 F. Supp. 1471, 1479 (D.R.I. 1984); *Regents of the Univ. of Colo. ex rel. Univ. of Colo. at Boulder v. Harbert Constr. Co.*, 51 P.3d 1037, 1041 (Colo. Ct. App. 2001); *Clark v. Int'l Harvester Co.*, 581 P.2d 784, 802–03 (Idaho 1978). The *Boston Helicopter* Court explained this approach as follows:

> "This is certainly not a case in which an exclusive or limited remedy failed of its essential purpose. To the contrary, the warranty provisions here operated just as intended, allocating the risk of loss between the parties both before and after the warranty expired. . . . A purchaser cannot claim that a warranty provision has failed of its essential purpose merely because a potential claim does not arise until after the warranty period has expired." *Arkwright-Boston Mfrs. Mut. Ins. Co.*, 844 F.2d at 1179 (quoting *Wis. Power & Light Co.*, 830 F.2d at 1412–13). Put another way, to apply 2-719(2) to an expired warranty is to confuse limitation of *remedy* with limitation of *liability*. *Hart Eng'g Co.*, 593 F. Supp. at 1479.

*Boston Helicopter*, 767 F. Supp. at 374.

Under the facts of this case, we agree with the trial court's decision that the fact that the alleged defect in the pipe sold by Hanson to Argo was latent does not cause the contractually limited remedy to fail of its essential purpose. Here, the dispute does not involve a consumer, as was the

case in **McCullough**. Rather, the dispute arises between two business entities, fully capable of bargaining over items such as the breadth and time period of the warranties on the product sold. The contract states specifically that the exclusive remedies and the limitations on Hanson's liability were "taken into account in establishing the price" of the concrete pipe. Under these circumstances, Argo assumed the risk that the pipe would develop problems after the one-year period in the contract expired.

This holding does not affect the claims of any other party against Hanson, and pretermits all other issues raised on appeal.

## CONCLUSION

The decision of the trial court is affirmed. The costs of this appeal are taxed to the Appellant Argo Construction Corporation, and its surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE