FILED
02/26/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2023 Session

## THE CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY D/B/A ERLANGER HEALTH SYSTEM v. UNITEDHEALTHCARE PLAN OF THE RIVER VALLEY, INC. D/B/A AMERICHOICE

Appeal from the Chancery Court for Davidson County
No. 09-1253-II      Anne C. Martin, Chancellor

———————————————

No. M2022-01543-COA-R3-CV

———————————————

An out-of-network hospital sued a TennCare managed care organization ("MCO"), seeking additional payment for healthcare services rendered to the MCO's members. The MCO moved for summary judgment on the hospital's claims for payment for post-stabilization services provided to both existing and retroactive members. With respect to the existing members, the MCO argued that the hospital could not show that the MCO had a legal obligation to pay for the post-stabilization services at issue. So the hospital could not establish that the MCO was unjustly enriched. The trial court agreed and summarily dismissed these claims. It also certified the dismissal as final. We vacate the dismissal and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, P.J., M.S., and KENNY W. ARMSTRONG, J., joined.

Steven A. Riley, Gregory S. Reynolds, James N. Bowen, Milton S. McGee, III, Joshua S. Bolian, and Grace C. Peck, Nashville, Tennessee, for the appellant, The Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System.

William H. Jordan, Wade P. Miller, Matthew Dowell, R. Joseph Burby, IV, and Rachel D. Leff, Atlanta, Georgia, and W. Scott Sims, Nashville, Tennessee, for the appellee, UnitedHealthcare Plan of The River Valley, Inc. d/b/a AmeriChoice.

# OPINION

## I.

This is a payment dispute between the Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System ("Erlanger"), a not-for-profit hospital system, and UnitedHealthcare Plan of the River Valley, Inc. d/b/a AmeriChoice ("AmeriChoice"), a TennCare managed care organization. Erlanger claimed it was entitled to additional payment for services rendered to thousands of AmeriChoice members during an approximately six-year period. According to Erlanger, AmeriChoice paid only a small fraction of what was owed. Erlanger asserted two quasi-contractual theories of recovery: breach of an implied contract at law and unjust enrichment. AmeriChoice counterclaimed that, under its interpretation of the TennCare rules, Erlanger had been overpaid. *See generally* TENN. COMP. R. & REGS. 1200-13-13-.08(2) (2024) (setting payment rates for non-participating providers).

Litigation between these parties began in 2009. A detailed description of this long-running litigation is unnecessary here. Suffice it to say that in a previous interlocutory appeal, our supreme court held that Erlanger had to exhaust administrative remedies before the trial court could rule on some of its claims. *Chattanooga-Hamilton Cnty. Hosp. Auth. v. UnitedHealthcare Plan of the River Valley, Inc.*, 475 S.W.3d 746, 765-66 (Tenn. 2015). On remand, the trial court stayed litigation related to the hospital's claims for reimbursement for emergency services. But the court allowed litigation on the remaining claims to proceed.

### A.

TennCare is a managed care system. TennCare beneficiaries are insured through private managed care organizations, such as AmeriChoice, which have agreed to arrange for the provision of healthcare services for their members in exchange for a monthly capitation payment from the State of Tennessee. Thus, "the MCOs, not the State, bear the financial risk involved in the administration of health care services to persons eligible for TennCare." *River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*, 173 S.W.3d 43, 48 (Tenn. Ct. App. 2002).

To reduce costs, the MCOs form networks of healthcare providers who contract to accept discounted rates for services to the MCO's members.[1] Erlanger was not a provider in AmeriChoice's managed care network during the relevant period. Yet under federal law, the hospital could not refuse emergency medical treatment to an AmeriChoice

---

[1] "If the MCO pays less in provider fees than the total amount received in capitation payments, it earns a profit. If the amount spent on care exceeds the capitation payments, the MCO bears the loss." *River Park Hosp.*, 173 S.W.3d at 48.

2

member.  *See* 42 U.S.C. § 1395dd.  The Emergency Medical Treatment and Active Labor Act, or EMTALA, required Erlanger to screen and then, if necessary, stabilize anyone who appeared in its emergency department seeking emergency medical treatment regardless of that person's ability to pay or insured status.  *See id.* § 1395dd(e)(1) (defining "emergency medical condition"), (e)(3)(A) (defining "to stabilize").  Thus, Erlanger could not discharge or transfer such a patient until the patient was stabilized.  *See id.* § 1395dd(c) (restricting transfers).

In accordance with federal and state law, AmeriChoice's risk agreement[2] with the State required AmeriChoice to provide coverage for emergency medical treatment.  The MCO was financially responsible for all pre-stabilization services provided to its members, even when provided by an out-of-network facility.  Pre-stabilization services included any healthcare services necessary "to evaluate or stabilize an emergency medical condition."  Under the agreement, the MCO could not require the out-of-network provider to seek pre-approval for such services.  State law governed the payment rate for out-of-network providers rendering emergency services.  *See* Tenn. Code Ann. § 71-5-108 (2019); TENN. COMP. R. & REGS. 1200-13-13-.08(2).

By contrast, post-stabilization services include those services administered to maintain the member's stability or, sometimes, to improve or resolve the member's condition.  For the most part, AmeriChoice was only financially responsible for post-stabilization services provided by an out-of-network provider if those services were pre-approved.  *See* 42 C.F.R. § 422.113(c)(2) (2023).  Unlike payment for pre-stabilization services, state law did not set the payment rate for post-stabilization services provided out-of-network.  But the MCO could control the cost of these services by negotiating a single-case fee arrangement with the out-of-network facility.[3]

AmeriChoice could request that a member be transferred to an in-network facility for post-stabilization services.  42 U.S.C. § 1395dd(c).  The risk agreement required AmeriChoice to establish a process for determining, "based upon medical criteria, if and when a member [could] be transferred" from an out-of-network facility to an in-network facility.  To that end, AmeriChoice directed its medical directors to review medical records of emergency admissions and confer with treating physicians to determine whether its members were stable for transfer.  But the MCO could not make a unilateral stabilization decision.  That responsibility rested with each patient's treating physician, whose decision on the matter was binding.  42 C.F.R. § 422.113(b)(3).

---

[2] AmeriChoice executed two risk agreements for the relevant period.  The provisions relevant to post-stabilization services are the same in both.

[3] Erlanger and AmeriChoice entered into some single-case agreements for out-of-network services during the relevant period.

B.

After the remand from the supreme court, AmeriChoice moved for summary judgment on the hospital's post-stabilization claims. Relying on the risk agreement, the MCO maintained that it was only financially responsible for post-stabilization services provided at an out-of-network facility if the services were pre-approved. And Erlanger failed to obtain the necessary pre-approval.

According to Erlanger, it informed AmeriChoice whenever an existing enrollee presented for emergency medical treatment. And AmeriChoice knew that Erlanger was required to continue providing services until the enrollee was transferred or discharged. If the treating physicians determined that post-stabilization services were necessary, Erlanger faxed AmeriChoice a letter explaining that one of its members had been admitted for inpatient treatment from the emergency department.[4] Along with the inpatient admission letter, it "provided AmeriChoice ample information about each patient's medical condition as contained in the [patient's] medical records." The inpatient admission letter was typically sent "at the time the case managers became aware that there was an AmeriChoice admission." Occasionally, a patient was discharged before this information was sent. Still, Erlanger insisted that AmeriChoice approved the inpatient admissions at issue here.

AmeriChoice argued that the inpatient admission letters were a poor substitute for proper notice of stabilization. The risk agreement incorporated a special federal rule governing post-stabilization services. *See* 42 C.F.R. § 422.113(c). In the MCO's view, the federal rule required Erlanger to provide specific notice of stabilization to obtain pre-approval of post-stabilization services. Erlanger maintained that explicit notice was unnecessary. And, even if it was required, the inpatient admission letter served that purpose.

Erlanger also sought payment for post-stabilization services provided to retroactive enrollees. These TennCare-eligible patients were retroactively assigned to AmeriChoice after discharge. According to the risk agreement, AmeriChoice could "not deny payment for medically necessary covered services provided [to retroactive enrollees] for lack of prior authorization or lack of referral." Still, AmeriChoice insisted that Erlanger was not entitled to additional payment for these unapproved services.

---

[4] AmeriChoice disputes whether Erlanger followed this procedure for every patient admitted during the relevant period. Because this appeal arises from AmeriChoice's motion for summary judgment, we assume that Erlanger's process was consistent. *See Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) ("[A]ny doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party").

C.

The trial court summarily dismissed the post-stabilization claims involving existing AmeriChoice members. Based on the risk agreement and the incorporated federal rule, the court determined that Erlanger was required to provide express notice of stabilization to obtain pre-approval of post-stabilization services for existing members. And it agreed with AmeriChoice that Erlanger's inpatient admission letters did not provide this notice. In the court's view, Erlanger's failure to provide the required notice barred recovery under an unjust enrichment theory for this group of claims.

But the court denied summary judgment as to the retroactive enrollees. Because these patients were not assigned to AmeriChoice until after discharge, it was "nonsensical" to require Erlanger to obtain pre-approval for services provided to them. Finding that Erlanger had "no choice" but to provide these services, the court ruled that Erlanger was entitled to seek a reasonable rate of reimbursement for the post-stabilization services provided to retroactive enrollees.

The court certified its dismissal of "Erlanger's claims related to the 1,354 patients who were AmeriChoice members during their hospitalization" as final under Tennessee Rule of Civil Procedure 54.02. It found these claims "present[ed] an aggregate of operative facts distinct from the claims that remain pending." And "there [was] no just reason for delay for the entry of final judgment."

**II.**

Erlanger raises three issues on appeal. The hospital challenges the trial court's ruling that federal law required it to provide an express "notice of stabilization" before it could obtain pre-approval of post-stabilization services. Assuming that such notice was required, the hospital insists that a genuine issue of material fact exists as to whether AmeriChoice had sufficient notice that the patients at issue were stabilized. Finally, the hospital contends, regardless of the notice issue, that a reasonable jury could find in its favor based on general principles of unjust enrichment. For its part, AmeriChoice argues that this Court lacks subject matter jurisdiction to consider this appeal.

A.

As a threshold matter, we must determine whether we have subject matter jurisdiction over this appeal. *See Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012); TENN. R. APP. P. 3(a), 13(b). "Subject matter jurisdiction refers to a court's lawful authority to adjudicate a legal matter." *New v. Dumitrache*, 604 S.W.3d 1, 14 (Tenn. 2020) (citing *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012)). Our subject matter jurisdiction is ordinarily limited to final judgments. *Carr v. Valinezhad*, No. M2009-00634-COA-R3-CV, 2010 WL 1633467, at *2 (Tenn. Ct. App.

5

Apr. 22, 2010) (citing *Bayberry Assocs. v. Jones,* 783 S.W.2d 553, 559 (Tenn. 1990)); TENN. R. APP. P. 3. A final judgment is one "that resolves all of the parties' claims and leaves the court with nothing to adjudicate." *Ball v. McDowell*, 288 S.W.3d 833, 836-37 (Tenn. 2009).

Tennessee Rule of Civil Procedure 54.02 provides an exception to the finality rule. *Ingram v. Wasson*, 379 S.W.3d 227, 238 (Tenn. Ct. App. 2011). It allows a trial court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties." TENN. R. CIV. P. 54.02. But the court must expressly find that there is no just reason for delay. *Id.*; *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983).

1. Whether there was a final judgment as to one or more claims

AmeriChoice contends that the trial court's judgment did not dispose of a distinct and separable claim. We review this question de novo. *King v. Kelly*, No. M2015-02376-COA-R3-CV, 2016 WL 3632761, at *3 (Tenn. Ct. App. June 28, 2016); *Ingram*, 379 S.W.3d at 238.

Like federal courts, Tennessee courts define a "claim" for these purposes as the "aggregate of operative facts which give rise to a right enforceable in the courts." *Christus Gardens, Inc. v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, No. M2007-01104-COA-R3-CV, 2008 WL 3833613, at *5 (Tenn. Ct. App. Aug. 15, 2008) (quoting *McIntyre v. First Nat'l Bank of Cincinnati*, 585 F.2d 190, 192 (6th Cir. 1978)); *Brown v. John Roebuck & Assocs., Inc.*, No. M2008-02619-COA-R3-CV, 2009 WL 4878621, at *5 (Tenn. Ct. App. Dec. 16, 2009) ("Since Tenn. R. Civ. P. 54.02 is substantially identical to Fed. R. Civ. P. 54(b), federal court opinions are considered persuasive authority in construing Rule 54.02."). Claims are distinct from theories of liability, causes of action, or counts in a complaint. *See Infinity Homes, Inc. v. Horizon Land Title, Inc.*, No. M2022-00829-COA-R3-CV, 2023 WL 3884723, at *5 (Tenn. Ct. App. June 8, 2023) (holding that different counts in a complaint were not separate claims when they all arose from the same transaction); *Christus Gardens, Inc.*, 2008 WL 3833613, at *5 (determining that different causes of action in the complaint represented different legal theories, not separate claims, because they were "based upon a closely related series of occurrences"). Analysis under Rule 54.02 depends on "whether the factual issues 'at the heart of' the claims are sufficiently distinct." *Baptist Mem'l Hosp. v. Argo Constr. Corp.*, 308 S.W.3d 337, 340 n.2 (Tenn. Ct. App. 2009) (quoting *Prudential Ins. Co. of Am. v. Curt Bullock Builders, Inc.*, 626 F. Supp. 159, 169 (N.D. Ill. 1985)).

Taking a bird's-eye view of this dispute, AmeriChoice insists that Erlanger only asserted a single claim: "that AmeriChoice owed it additional money for medical

6

services."[5] Whether the patient was an existing member or a retroactive enrollee, the MCO maintains that the aggregate of operative facts for each asserted "claim" is the same— "a patient present[ed] to Erlanger with an emergency medical condition" which resulted in "Erlanger and its physicians . . . provid[ing] post-stabilization care." And, because the issues remaining in the trial court are "inextricably linked" to the issues on appeal, AmeriChoice insists that the court improvidently certified the dismissal as final.

We find these arguments unpersuasive. Erlanger seeks additional payment for services rendered to thousands of AmeriChoice members. Although the hospital has asserted a single theory of recovery and there is some factual overlap between the two groups of patients, the factual issues "at the heart of" the parties' dispute with respect to each group are "sufficiently distinct" for Rule 54.02 purposes. *See Baptist Mem'l Hosp.*, 308 S.W.3d at 340 n.2. The pre-approval issue only applies to the claims involving existing members. Thus, only these claims require consideration of whether Erlanger had to satisfy the requirements of the risk agreement, and if so, whether a specific notice of stabilization was essential to do so. Our analysis of these issues will not affect the ongoing proceedings in the trial court with respect to the retroactive enrollees. Conversely, the outcome of the trial on those claims will not impact our review. *See Ingram*, 379 S.W.3d at 238 (rejecting the argument that 54.02 certification was improper, in part, because the "analysis of the claim at issue in this appeal is not affected by the trial court's resolution of the issues that remain pending in the trial court").

2. Whether there was no just reason for delay

AmeriChoice also contends that, even if there was a final judgment as to one or more claims, the trial court erred by failing to consider relevant factors before determining that there was no just reason for delay. *See Fed. Nat'l Mortg. Ass'n v. Quarles*, No. M2015-01620-COA-R3-CV, 2016 WL 5723957, at *6-7 (Tenn. Ct. App. Sept. 30, 2016) (explaining that a trial court's decision under Rule 54.02 may be subject to reversal if it fails to "weigh and examine the competing factors involved in the certificat[ion] decision" (quoting *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1030 (6th Cir. 1994))); *Brown*, 2009 WL 4878621, at *7-8 (listing the factors to be considered by the trial court in making this decision). We review this issue under an abuse of discretion standard. *See King*, 2016 WL 3632761, at *3.

The trial court was not required to explain its decision. *See Huntington Nat'l Bank v. Hooker*, 840 S.W.2d 916, 922 (Tenn. Ct. App. 1991). However, the court's rationale for

---

[5] AmeriChoice does not argue, and we do not find, that AmeriChoice's counterclaim affects the finality of the trial court's judgment under Rule 54.02. *See Baptist Mem'l Hosp.*, 308 S.W.3d at 340 n.2 (reasoning that the mere "presence of counterclaims does not render certification inappropriate").

7

concluding that there was no just reason for delay should "be apparent from the record." *In re Est. of Smith*, No. W2023-00364-COA-R3-CV, 2024 WL 1406338, at *3 (Tenn. Ct. App. Apr. 2, 2024).

We discern no abuse of discretion here. As discussed, the two groups of claims have distinct issues and material facts. Resolution of the issues on appeal will not affect the proceedings in the trial court. And it is doubtful that future developments in the trial court will moot the need for review of the summary dismissal. No damages have been awarded. So we are not concerned with a potential set-off. And delaying this appeal will only prolong this litigation. Erlanger asserts that it will appeal the dismissal of these claims regardless of the outcome in the trial court. Thus, we find it appropriate to reach the merits of this appeal.

## B.

Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). A trial court's decision on summary judgment presents a question of law, which we review de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015).

Where, as here, the party moving for summary judgment does not have the burden of proof at trial, the moving party must submit evidence either "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim." *Id.* at 264. At this stage, we must "view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in the non-moving party's favor." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005) (citing *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000)).

Erlanger asserted two theories of recovery in its complaint: breach of an implied contract at law and unjust enrichment. Both are quasi-contract theories by which a court may impose a contractual obligation where one does not exist. *Id.* at 524-25; *see also Whitehaven Cmty. Baptist Church v. Holloway,* 973 S.W.2d 592, 596 (Tenn. 1998). A contract implied in law is "created by law without the assent of the party bound, on the basis that [it is] dictated by reason and justice." *River Park Hosp.*, 173 S.W.3d at 57 (quoting *Angus v. City of Jackson,* 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997)). Our courts may impose an implied contract at law under an unjust enrichment theory. *Freeman Indus.*, 172 S.W.3d at 524-25; *Whitehaven,* 973 S.W.2d at 596. To prevail under either

asserted theory, Erlanger must prove three elements: (1) a "benefit conferred upon the defendant by the plaintiff," (2) "appreciation by the defendant of such benefit," and (3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus.*, 172 S.W.3d at 525 (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)).

AmeriChoice convinced the trial court it was entitled to a judgment as a matter of law on this group of claims because Erlanger did not satisfy the requirements of the MCO's risk agreement. The risk agreement required AmeriChoice to provide post-stabilization services "in accordance with 42 C.F.R. [§] 422.113." And that regulation limited the MCO's financial responsibility to pre-approved services. *See* 42 C.F.R. § 422.113(c)(2)(i). In the MCO's view, Erlanger had to provide a specific "notice of stabilization" to obtain the necessary pre-approval. Because the hospital failed to do so, it could not recover under its quasi-contract theories. The trial court agreed and summarily dismissed these claims.

As Erlanger points out in its third issue, AmeriChoice's summary judgment argument was premised on a fundamental misunderstanding of our decision in *River Park Hospital, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 173 S.W.3d 43 (Tenn. Ct. App. 2002). According to AmeriChoice, the *River Park* decision mandates that Erlanger produce evidence of a "reciprocal obligation" or "forced dealing" to prove the third element of unjust enrichment—the "acceptance of [a] benefit under such circumstances that it would be inequitable . . . to retain the benefit without payment of the value thereof." *See Freeman Indus.*, 172 S.W.3d at 525 (quoting *Paschall's, Inc.,* 407 S.W.2d at 155). In other words, "[u]nless AmeriChoice was legally required to pay for these services under its risk agreement, there can be no unjust enrichment." But *River Park* contains no such mandate.

In *River Park*, an out-of-network hospital claimed entitlement to additional compensation from an MCO for pre-stabilization services provided to the MCO's members. 173 S.W.3d at 50. Thousands of MCO members received emergency services at the out-of-network facility. *Id.* at 51. Although the hospital billed the MCO for these services at its standard rates, the MCO only paid its discounted network rates. *Id.* at 50-51. After a bench trial, the court found in favor of the hospital on its unjust enrichment theory. *Id.* at 53. On appeal, the MCO complained that the "enrichment was not unjust." *Id.* In reviewing the evidentiary basis for the court's finding, we noted that the evidence of forced dealing was "a critical factor in the trial court's decision." *Id.* at 59. While other facts also informed the trial court's decision, we emphasized this critical factor in affirming the trial court's decision, explaining "while neither of these parties may have wanted to deal with the other, both were left with no choice." *Id.* at 59-60.

Our decision in *River Park* did not set a new legal standard for unjust enrichment actions. Notably, we were reviewing the trial court's findings after a bench trial. *Id.* at 53-54; *see* TENN. R. APP. P. 13(d). We never indicated that a "legal obligation to pay" or "forced dealing" was a mandatory prerequisite for recovery in an unjust enrichment case.

9

As our supreme court has recently clarified, "the three-element test from *Freeman Industries* is the proper test to apply in [a] case alleging unjust enrichment." *Family Tr. Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 305 (Tenn. 2024). Nor should our analysis in *River Park* be used to dictate the proof necessary to establish the third element of an unjust enrichment action. While the evidence of "forced dealing" in *River Park* may have had determinative weight in that case, inequity or injustice may arise from other circumstances. *See id.* at 305-06 (declining to limit unjust enrichment to circumstances involving "the willing conferring of a benefit by one party to the other").

"Each case of unjust enrichment must be examined in light of its factual situation and decided according to the essential elements of unjust enrichment." *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995). The lack of a separate legal obligation to pay for the asserted benefit does not bar an unjust enrichment action as a matter of law. So the trial court erred in summarily dismissing this group of claims on that basis. Our conclusion makes it unnecessary to address Erlanger's remaining issues on appeal.

## III.

The trial court erred in summarily dismissing Erlanger's claims for payment for post-stabilization services provided to existing AmeriChoice members. Thus, we vacate the dismissal of those claims and remand this case to the trial court for further proceedings consistent with this opinion.

_s/ W. Neal McBrayer_____
W. NEAL MCBRAYER, JUDGE

10